22-15979

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

## LENA EVANS, ET AL
*Plaintiff - Appellant*
v.
## PAYPAL, INC.
*Defendant – Respondents*

---

## APPEAL FROM A JUDGMENT OF THE DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, THE HON. BETH LABSON FREEMAN (No. 5:22-CV-00248-BLF)

---

## APPELLANT'S OPENING BRIEF

---

ERIC BENSAMOCHAN, SBN 255482
**THE BENSAMOCHAN LAW FIRM**
9025 Wilshire Blvd, Suite 215
Beverly Hills, CA 90211
Tel: (818) 961-0138
Fax: (818) 230-1931
Email: eric@eblawfirm.us

EDWIN SCHREIBER, SBN 41066
ERIC SCHREIBER, SBN 194851
EAN SCHREIBER, SBN 284361
16633 Ventura Blvd., Suite 1245
Encino, Ca 91436
Tel: (818) 789-2577
Fax: (818) 789-2577
Ed@Schreiberlawfirm.com
Eric@schreiberlawfirm.com
Ean@Schreiberlawfirm.com

**TABLE OF CONTENTS**

I.   JURISDICTIONAL STATEMENT ...................................................................1

II.  ISSUES PRESENTED FOR REVIEW ............................................................2

III. STATEMENT OF THE CASE ........................................................................2

   A. Procedural Background ...............................................................................2

   B. Nature of the Case .....................................................................................3

IV.  THE STANDARD OF REVIEW ....................................................................5

V.   ARGUMENT ................................................................................................5

   C. The Motion Did Not Provided Evidence That Plaintiffs Entered into An

   Arbitration Agreement. ..................................................................................6

   D. This Court May Decide Arbitrability. .........................................................7

   E. Plaintiff May Assert State Law Contract Defenses to The Arbitration Clause.

     10

   F. The Arbitration Clause is Unenforceable Based on Unconscionability.........19

     1. Procedural Unconscionability ...................................................................20

     2. Substantive Unconscionability and Forum Selection ................................21

     3. PayPal's Seizure of Funds Shocks the Conscience....................................22

4.  The Arbitration Clause Contains an Anti-Class Action Provision Which Violates California's Public Policy...................................................................24

5.  The Arbitration fees can also greatly exceed the cost of litigation.............26

6.  Other Violations Which Also Render the Agreements Unconscionable....28

G.  The Entire TOS Agreement With all Members of the Public is Illusory, Thus Rendering the Entire Agreement (Including the Arbitration Clause) Void. .......29

VI.  CONCLUSION ................................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 12; 108 Cal. Rptr. 2d
    699 (2001) ........................................................................14

*American Express Co v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013)..........26

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 Cal. Rptr.
    2d 745, 6 P.3d 669, 697, 775 (Cal. 2000) ...........................................................10

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d
    742 (2011) ........................................................................10

*Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019)....................................24

*Blake v. Ecker*, 93 Cal. App. 4th 728, 741, 113 Cal. Rptr. 2d 422 (2001) ....... 18, 22

*Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844, (6th Cir., 2020)..7

*Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal. 4th 495, 506-507, 30
    Cal. Rptr. 3d 787, 115 P.3d 68 (2005)...............................................................12

*Bolter v. Superior Court*, 87 Cal. App. 4th 900, 909-10, 104Cal. Rptr. 2d 888
    (2001) .................................................................................21

*Brazil v. Dell, Inc.*, 2007 U.S. Dist. LEXIS 59095, 10 (N.D. Cal., 2007)...............16

*Brennan v. Opus Bank*, 796 F. 3d 1125 (2015) at 1128, ..........................................5

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp*., 622 F.3d 996, 1000 (9th Cir. 2010) ................................................................................7

*Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir., 2013)...................10

*Comb v. Paypal, Inc*., 218 F. Supp. 2d 1165, 1175-1176, 2002 U.S. Dist. LEXIS 16364 (N.D. Calif., 2002) ....................................................................21

*Danley v. Encore Capital Grp., Inc*., 680 Fed. Appx. 394, 399, 2017 U.S. App. LEXIS 3388, (6th Cir., 2017) .............................................................8

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).......................................................................7

*Flores v. Transamerica HomeFirst, Inc.,* 93 Cal. App. 4th 846, 853, 113 Cal. Rptr. 2d 376 (2001) .......................................................................19

*Gaham v. Scissor-Tail, Inc*. (1981) 28 Cal.3d 807, 825, 171 Cal.Rptr. 604, 623 P.2d................................................................................13

*Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014 .1

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) ................................................................................20

*McArdle v. AT&T Mobility LLC*, 772 Fed.Appx. 575 (9th Cir. 2019)....................24

*McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017) ........................................................24

*Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 176, 116 Cal. Rptr. 2d 671 (2002) ........................................................................................................................20

*Merkin v. Vonage Am., Inc.*, 639 Fed. Appx. 481, 2016 U.S. App. LEXIS 8188 (9th Cir., 2016) ...............................................................................................................7

*Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir.2011)...................................................5

*Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 468, 11 Cal. Rptr. 2d 330, 834 P.2d 1148 (1992)...............................................................................................18

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010)...................................................................................................7

*Rosenthal v. Great W. Fin. Securities Corp.*, 14 Cal.4th 394, 413, 926 P.2d 1061, 58 Cal. Rptr. 2d 875 (1996) ...................................................................................6

*Sparling v. Hoffman Const. Co., Inc.,* 864 F. 2d 635 (9th Cir. 1988) at. 638.............5

*Steven v. Fidelity & Casualty Co.*, 58 Cal.2d 862, 882, 27 Cal.Rptr. 172, 377 P.2d 284, 297 (1962) ....................................................................................................19

*Ticknor*, 265 F.3d at 940-41....................................................................................20

*Tillage v. Comcast Corp.*, 772 Fed.Appx. 569 (9th Cir. 2019) ...............................24

*Washington Mutual Bank v. Superior Court,* 24 Cal. 4th 906, 917, 15 P.3d 1071,

    103 Cal. Rptr. 2d 320 (2001) ...............................................................18

*Y.K.A. Industries, Inc. v. Redevelopment Agency of the City of San Jose* (2009) 174

    Cal.App.4th 339 at 357, 361 .............................................................13

*Zaborowski v. MHN Gov't Servs., Inc*., 601 F. App'x 461, 464-465 (9th Cir. 2014)

    .........................................................................................................11

## Statutes

California <u>Civil Code</u> § 1542 ...................................................................27

California <u>Civil Code</u> § 3513 ...................................................................13

California <u>Civil Code</u> Section 1668.........................................................13

Federal Arbitration Act ................................................................... 10, 23

# I.    JURISDICTIONAL STATEMENT

Federal Court Jurisdiction

The action was filed in the United States District Court, Northern District of California, by Plaintiffs Lena Evans, Roni Shemtov, and Shbadan Akylbekov ("Plaintiffs or "Appellants"), and against Defendant Paypal, Inc.("Defendant" or "Paypal") on January 13, 2022. The lawsuit involves federal statutes (the Federal Arbitration Act), resulting in jurisdiction for the District Court.

Appellate Court Jurisdiction

The order, which is the subject of this appeal, is an order of the District Court on June 2, 2022, in favor of Paypal, which compels Plaintiff to go to arbitration and dismiss the case. [1] In this situation, since the case was dismissed (as opposed to stayed), it is immediately appealable.  See *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014).  Plaintiffs timely filed notice of appeal on June 29, 2022.  Therefore, there is appellate jurisdiction.

---

[1]  The matter was heard without oral argument, thus no reporter's transcript. ORDER 1-ER-002.

## II.   ISSUES PRESENTED FOR REVIEW

Appellants contend there is one primary issue on appeal:

1. Was the District Court correct in granting the Motion to Compel Arbitration and dismissing the case?

## III.   STATEMENT OF THE CASE

### A. Procedural Background

This case was initiated on January 13, 2022, by the filing of the Complaint and other initiating documents. (4-ER-774) On March 16, 2022, Paypal filed its Motion to Compel Arbitration. (2-ER-115) Plaintiffs filed their initial opposition on April 22, 2022, (2-ER-054) but it was stricken by the Court for exceeding the page count. (2-ER-052) The opposition was refiled on April 26, 2022. (2-ER-037) Paypal filed its Reply to the Opposition on May 11, 2022. (2-ER-015) The trial court dispensed with oral argument and entered an Order Granting Paypal's Motion to Compel Arbitration on June 2, 2022, as (1-ER-002). This appeal follows.

**B. <u>Nature of the Case</u>**

Consumers receive an email from PayPal informing them that they have violated PayPal's terms of service ("TOS") and/or acceptable use policy ("AUP"), and that their accounts, and all monies therein are frozen while the account is "under investigation."

In every instance, PayPal refused to tell customers what the violation was, often telling consumers they have to "get a subpoena" even to know the nature of why their account has been frozen (which account freeze also prohibits the user from withdrawing any money in the user's account).

While an account is" under investigation," consumers are not told of the nature of or why their account is suspended, nor are they given the right to dispute any claims, provide documents or evidence to counter the claim that they have in some undisclosed manner violated the terms of service. The account holders are not given any right whatsoever to dispute the claim, or even discover the nature of why their account has been suspended. Under its TOS, Paypal has the right to suspend an account for up to six (6) months. Apparently, the entire investigation (if, in fact, one is performed, which is highly doubtful) into violations is done in-house by PayPal employees (meaning it is not done by an independent

-3-

investigation or third-party service). During this "investigation," the consumer is given no notice of the claimed violations, or any opportunity to even be heard as to why the consumer claims the alleged violation did not occur.

Thereafter, in virtually every scenario (save and except a few occasions where public pressure was put on PayPal to return funds), PayPal sends the consumer an email informing the consumer that they have violated the TOS and/or AUP and that **all of the money** in the user's PayPal account has been taken by PayPal for itself as "liquidated damages" under the liquidated damages provision which permits PayPal to pay itself $2,500 **per violation** as liquidated damages from the user's funds held (and frozen) in his or her PayPal account.

In every instance, this has led to PayPal draining every cent from the user's account (whether there was a proven violation or not, and even if only some of the transactions were even conceivably violations of the AUP). PayPal merely sends the user an email stating that the TOS and/or AUP were violated (no explanation of the specific violation or any other explanation provided) and that PayPal has taken all of the funds out of the user's account as liquidated damages under the TOS. The amounts taken have ranged from a few hundred dollars in some instances to

several hundred thousand dollars in others. See the ORDER GRANTING

MOTION TO COMPEL ARBITRATION ("ORDER") on page 3 (1-ER-004)

(showing seizures of a low of $26,084 to as high of $172,206.43).

    After draining the user's account in full, and keeping all funds for itself,

PayPal closes/terminates the user's account. To add insult to injury, PayPal often

follows up by sending the user a tax form indicating that the user owes income tax

on all the funds PayPal has seized.

## IV.   <u>THE STANDARD OF REVIEW</u>

    Regarding a motion to compel arbitration and dismiss, the standard of

review is *de novo.* See *Brennan v. Opus Bank*, 796 F. 3d 1125 (2015) at 1128, "We

review de novo the district court's decisions about the arbitrability of claims."

*Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir.2011)." See also *Sparling v. Hoffman

Const. Co., Inc.,* 864 F. 2d 635 (9th Cir. 1988) at. 638.

## V.   <u>ARGUMENT</u>

    The District Court Committed Reversible Prejudicial Error When It

Improperly Granted PayPal's Motion to Compel Arbitration and Dismissed The

Case.

C. **The Motion Did Not Provide Evidence That Plaintiffs Entered into An Arbitration Agreement.**

First, Plaintiffs were precluded from making a full and complete opposition because the Magistrate has a ten-page limit on oppositions and relied upon an unreported earlier PayPal case in her Court, although Plaintiffs had no part in that case. ORDER pg 4 lns 9-16. (1-ER-005)

The Motion on Page 1, Section A (2-ER-122) marked a conclusory statement without proof that the Plaintiffs herein agreed to arbitrate. The Motion claims that by virtue of creating a PayPal account, Plaintiffs must have clicked a box affirming that they read and agreed to the UA. Although an electronic record constitutes sufficient evidence that the parties have entered into a binding agreement, the applicable statutes require the production of a record that the parties have entered into an agreement and evidence of the terms and conditions contained in such agreement.

> "Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." *Rosenthal v. Great W. Fin. Securities Corp.*, 14 Cal.4th 394, 413, 926 P.2d 1061, 58 Cal. Rptr. 2d 875 (1996).

> Since the Motion does not provide a record that Plaintiffs Lena Evans, Roni

-6-

Shemtov, and Shbadan Akylbekov entered into the arbitration agreement, the Motion should have been denied.

To carry this burden, PayPal should have produced a record for each of the Plaintiffs showing that they personally executed the agreement. The Motion contains no such exhibit.

**D. <u>This Court May Decide Arbitrability.</u>**

It is appropriate for this Court to determine the arbitration clause's enforceability and the class action waiver provision. "[W]hen a plaintiff argues that an arbitration clause, standing alone, is unenforceable . . . that is a question to be decided by the court." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp*., 622 F.3d 996, 1000 (9th Cir. 2010). Plaintiffs' challenge was clearly directed at the arbitration provision." *Merkin v. Vonage Am., Inc*., 639 Fed. Appx. 481, 2016 U.S. App. LEXIS 8188 (9th Cir., 2016).

While the FAA allows parties to agree that an arbitrator, rather than a court, will determine gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy [*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010)], such an agreement, commonly known as a delegation clause,

requires clear and unmistakable evidence that the parties agreed to have an arbitrator decide arbitrability. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844, (6th Cir., 2020) [quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)]. See also *Rent-A-Center, supra*, 561 U.S. at 69, footnote1.

Only a specific challenge to a delegation clause brings arbitrability issues back within the court's province. *Rent-A-Center, supra*, 561 U.S. at 72 (unless a party challenges the delegation provision specifically, the court must leave any challenge to the validity of the Agreement as a whole for the arbitrator).

A party seeking to avoid the effects of a delegation clause should raise a challenge, at least in its opposition to a motion to compel arbitration. *Id*. If a party fails to acknowledge its delegation provision, let alone challenge it, they forfeit any such challenge. *Danley v. Encore Capital Grp., Inc*., 680 Fed. Appx. 394, 399, 2017 U.S. App. LEXIS 3388, (6th Cir., 2017).

In the District Court, the class claimants' opposition clearly challenged the enforceability of any provisions which purport to be a delegation clause. (2-ER-060). There is no evidence, let alone clear and unmistakable evidence, that the

parties agreed to have an arbitrator decide arbitrability.

The top of page 5 of PayPal's user agreement states what may possibly constitute a delegation clause:

> All determinations as to the scope, interpretation, enforceability, and validity of this Agreement shall be made final exclusively by the arbitrator, which award shall be binding and final Judgment on the arbitration award may be entered in any court having jurisdiction.

Class claimants, nor would any normal class member ever realize that this convoluted clause meant that they were giving up their right to have a Court determine the arbitrability of their disputes with PayPal. Hence, Class Claimants never agreed to have an arbitrator determine arbitrability rather than this Court.

Furthermore, this clause is just as unconscionable as the rest of the user agreement. This Court must determine whether an enforceable contract even exists. PayPal's ability to invoke the arbitration clause of the user agreement constitutes an issue of enforceability that this Court should, in the interest of justice, determine.

Section 14.3(d) Agreement to Arbitrate, states, in relevant part:

> d. Severability.
> . . . If a court decides that any of the provisions in subsection (a) of this Agreement to Arbitrate ("Prohibition of Class and Representative Actions and Non-Individualized Relief") is invalid or unenforceable, then the

entirety of this Agreement to Arbitrate shall be null and void. The remainder of the User Agreement, including all other provisions of Section 14 (Disputes with PayPal), will continue to apply.

Because Section 14.3(d) states, "if a court decides," the user agreement acknowledges that the court, and not an arbitrator, is the appropriate forum to determine whether any provisions of the agreement to arbitrate are invalid and unenforceable. Hence, the purported delegation clause is unenforceable because of the contradictory language in this provision.

## E. __Plaintiff May Assert State Law Contract Defenses to The Arbitration Clause.__

In this case, both the language of the arbitration clause itself as well as the law found in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) ("Concepcion") permits the court to determine substantive defenses under state law.

> [W]hile Concepcion outlaws discrimination in state policy that is unfavorable to arbitration, it leaves intact state-law defenses that are agnostic towards arbitration." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir., 2013). "The application of California's unconscionability doctrine in this case is not unfavorable towards arbitration, but instead reflects a generally applicable policy against abuses of bargaining power. *Id*.

The Federal Arbitration Act ("FAA") does not preempt the invalidation of

an arbitration clause or a class action waiver provision where the application is unconscionable.

Under California law, a court may refuse to enforce an arbitration agreement that is "permeated" by unconscionability. *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 99 Cal. Rptr. 2d 745, 6 P.3d 669, 697, 775 (Cal. 2000) ("given the multiple unlawful provisions, the trial court did not abuse its discretion in concluding that the arbitration agreement is permeated by an unlawful purpose").

The Supreme Court of California in *Armedariz, supra*, 24 Cal4th at 775 held:

> In this case, two factors weigh against severance of the unlawful provisions. First, the arbitration agreement contains more than one unlawful provision; it has both an unlawful damages provision and an unconscionably unilateral arbitration clause. Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage.

See *Zaborowski v. MHN Gov't Servs., Inc*., 601 F. App'x 461, 464-465 (9th Cir. 2014) (Gould, J., concurring in part and dissenting in part) ("*Concepcion* and its progeny should create a presumption in favor of severance when an arbitration agreement contains a relatively small number of unconscionable provisions that

can be meaningfully severed").

In the instant case, there are too many unconscionable provisions to make severance a viable option. While the U.S. Supreme Court in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) held that California's so-called Discover Bank rule is preempted by the FAA, as stated by the dissent, state law defenses such as unconscionability are still viable and can be raised. Hence, where warranted, as clearly appears in the instant case, the arbitration clause and class action waiver provisions should be stricken on the basis of their unconscionability.

Under California law, a right or cause of action created for a public purpose cannot, by private agreement, be waived, contravened, burdened, or subjected to procedural shortcomings that preclude its vindication-the exact situation in this case.

California courts should refuse to enforce arbitration provisions on public policy grounds that impede the enforcement of unwaivable statutory rights. See *Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal. 4th 495, 506-507, 30 Cal. Rptr. 3d 787, 115 P.3d 68 (2005) (stating that employees subject to mandatory

arbitration agreements must be ensured certain minimum standards of fairness to "vindicate their public rights in an arbitral forum").

Class claimants, and thousands of other PayPal users whose funds were stolen by PayPal without a semblance of due process of law, have public rights under the United States Constitution. The user agreement, as written, entirely deprives PayPal [2]users of the right to address their grievances before PayPal seizes their funds, without notice or even an explanation as to the reason. **Even a governmental agency cannot take a person's money without providing a fair hearing by a neutral**. See *Y.K.A. Industries, Inc. v. Redevelopment Agency of the City of San Jose* (2009) 174 Cal.App.4th 339 at 357, 361; See also *Gaham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 825, 171 Cal.Rptr. 604, 623 P.2d. Moreover, the PayPal situation is particularly harsh since it first deprives the member of his money for 180 days and then takes all of it, depriving the user of the

---

[2] As pointed out in the ORDER, (1-ER-004) in the case of the Skylbekov plaintiffs, PayPal first froze and then seized $172,206.43. Such a massive seizure of liquid assets deprived them of the funds necessary to employ an attorney and pay arbitration fees--*a triple whammy*.

funds necessary to hire a lawyer and pay arbitration fees.

California <u>Civil Code</u> Section 1668 makes unlawful those contracts that would exempt a party from violations of law. See *Armendariz, supra*, 24 Cal. 4th at 100 (explaining that this rule derives from California <u>Civil Code</u> § 3513, which prohibits the contractual waiver of legal rights established for a public purpose, and section 1668, which makes unlawful those contracts that would exempt a party from violations of law).

Following this principle, California courts have stricken arbitration provisions that would prevent the enforcement and vindication of public rights by imposing unreasonable fees on a party [*Armendariz, supra*, 24 Cal. 4th at 110-111] or by requiring arbitration in a distant and inconvenient forum *[America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 12; 108 Cal. Rptr. 2d 699 (2001)].

> Our law favors forum selection agreements only so long as they are procured freely and voluntarily, with the place chosen having some logical nexus to one of the parties or the dispute, and so long as California consumers will not find their substantial legal rights significantly impaired by their enforcement. *America Online, supra*, 12.

The same protections should be afforded the California class claimants because the Delaware choice of law provision deprives them of substantial legal

-14-

rights afforded to them under California law.

Other than PayPal being a Delaware corporation, Delaware has absolutely no relationship with the transactions at issue in this case, and has absolutely no reason to have its law applied in this case. Nothing has occurred in Delaware other than the filing of article of incorporation. PayPal's principal place of businesses and even its legal team are based in California, and PayPal apparently does not even have one place of business or even one employee in Delaware.

Two of the Class Claimants reside in California. PayPal users' interests in being protected by California law where an out-of-state company is stealing customer funds is a far greater nexus and public policy concern than enforcing a Delaware choice of law provision, where Delaware has absolutely no connection with the substantive issues at stake in this case. [3]

---

[3]  Given that California is the most populous state and has the world's fifth largest economy, it is a virtual certainty that there are more Californians who PayPal has wronged than in any other state (and most assuredly Delaware which according to the latest census has approximately one million residents, or about ten percent (10%) of the population of Los Angeles County per the latest census).

California case law demonstrates a public policy which is designed to protect persons against oppressive and long confusing contracts which no consumer would read or understand. Realistically, no consumer would know or understand that he or she was consenting to have his or her money forfeited without an explanation, a hearing, or even any opportunity to contest the seizure, other than waiting one hundred eighty (180) days, and then hiring an attorney (after his or her liquid assets have been stolen by PayPal), and go to arbitration, and if more than $10,000 is involved, likely pay, in addition to attorney fees, arbitration fees.

In the case of PayPal, these contractual provisions are particularly egregious because of PayPal vastly superior bargaining power. PayPal totally dominates the payment mechanism platform and industry. Indeed, many web sites and landlords only allow PayPal as a means of effectuating payment.

This Court should not allow PayPal to use hidden and confusing class action waivers to exculpate itself from obvious liability. Class actions were designed not only to compensate victimized groups, but also to deter violations of law. Permitting PayPal to prohibit class actions through an obscure and confusing

contract provision is contrary to California public policy because it undermines the strong public interest in deterring obvious wrongdoing. The loss of an individual consumer's right to bring a class action negatively impacts the rights of thousands of unnamed, but clearly wronged, class members, on whose behalf the class action should proceed. In this sense, the right to pursue a class action is a public -- not merely a private -- right. It protects the rights of consumers as a whole, and requires the wrongdoer, in this case PayPal to disgorge the millions it has ruthlessly and arbitrarily taken from innocent users.

Whether a class action waiver provision will be considered unconscionable in California "is a fact-specific, case-by-case inquiry." *Brazil v. Dell, Inc.*, 2007 U.S. Dist. LEXIS 59095, 10 (N.D. Cal., 2007), (citing *Discover Bank, Cohen and Douglas*). The Court in *Brazil v. Dell, supra*, refused to uphold and enforce a Delaware choice of law clause as to its arbitration provisions.

The Delaware choice-of-law provision in this case is invalid because applying Delaware law would eviscerate California's fundamental policy of protecting consumers from the oppressive use of superior bargaining strength, and the large-scale theft of PayPal user funds alleged in the Class Action Complaint. PayPal carried out a scheme to deliberately cheat large numbers of its users. The

user agreement was presented on a take it or leave it basis, and even though buried

in it  is an opt out provision, the vast majority of PayPal users have never noticed

it, or thought to check it. The sole reason PayPal seditiously included an opt out

provision was so as to prevent the Court from finding the user agreement

procedurally unconscionable. Further, the sole reason PayPal selected Delaware

instead of California as its choice of law, is to deprive its users of the favorable

consumer protections that exist under California law.

The California Supreme Court set forth the burden of proof in a choice-of-

law question in its decision in *Washington Mutual*, as follows:

> [I]f the proponent of the [choice-of-law] clause . . . demonstrates that the
> chosen state has a substantial relationship to the parties or their transaction,
> or that a reasonable basis otherwise exists for the choice of law, the parties'
> choice generally will be enforced unless the other side can establish both
> that the chosen law is contrary to a fundamental policy of California and that
> California has a  materially greater interest in the determination of the
> particular issue.  *Washington Mutual Bank v. Superior Court,* 24 Cal. 4th
> 906, 917, 15 P.3d 1071, 103 Cal. Rptr. 2d 320 (2001), citing *Nedlloyd Lines
> B.V. v. Superior Court*, 3 Cal. 4th 459, 468, 11 Cal. Rptr. 2d 330, 834 P.2d
> 1148 (1992).

Under this standard, the burden in the present case is on PayPal to show

either that Delaware has a substantial relationship to the parties, or that a

reasonable basis exists for the choice of Delaware law. Class claimants adamantly

deny that there is any reasonable basis exists for the choice of Delaware law over California law. PayPal users reside in California and in many other states, and in other countries. Other than PayPal being incorporated in Delaware, there is no connection between Delaware and PayPal's scheme to defraud its users by stealing user

**F. The Arbitration Clause is Unenforceable Based on Unconscionability.**

Unconscionability is a defense applicable to contracts generally and thus may be raised in defense to an arbitration provision. *Blake v. Ecker*, 93 Cal. App. 4th 728, 741, 113 Cal. Rptr. 2d 422 (2001). Unconscionability has both procedural and substantive components. *Id*. at 742. The procedural component is satisfied by the existence of unequal bargaining positions and hidden terms common in the context of adhesion contracts. *Id*. The substantive component is satisfied by overly harsh or one-sided results that "shock the conscience." *Id*. The two elements operate on a sliding scale such that the more significant one is, the less significant the other need be. *Id.* at 743. A claim of unconscionability cannot be determined merely by examining the face of the contract; there must be an inquiry into the circumstances under which the contract was executed, its purpose, and effect. *Id.*

1.    *Procedural Unconscionability*

A contract or clause is procedurally unconscionable if it is a contract of adhesion. *Flores v. Transamerica HomeFirst, Inc.,* 93 Cal. App. 4th 846, 853, 113 Cal. Rptr. 2d 376 (2001). A contract of adhesion, in turn, is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz v. Foundation Health Psychcare Serv*., 24 Cal. 4th 83, 113 (2000) (citations and internal quotation omitted) See *Steven v. Fidelity & Casualty Co.*, 58 Cal.2d 862, 882, 27 Cal.Rptr. 172, 377 P.2d 284, 297 (1962), where the court stated:

> [A contract of adhesion] refers to a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a "take it or leave it" basis, without opportunity for bargaining and under such conditions that the "adherer" cannot obtain the desired product or service save by acquiescing in the form agreement.

The PayPal click wrap UA has all the hallmarks of an adhesion contract. It is prepared by PayPal and presented to users who can either accept it or cancel their account.

2.      *Substantive Unconscionability and Forum Selection*

Substantive unconscionability has been found in many cases based upon arbitration provisions requiring arbitration of the weaker party's claims but permitting a choice of forums for the stronger party. See, e.g., *Ticknor*, 265 F.3d at 940-41; *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 176, 116 Cal. Rptr. 2d 671 (2002). PayPal is more likely to avoid liability in Delaware because there is a larger body of California case law which protects consumers from just the sort of actions taken by PayPal, whereas Delaware's consumer protections are less extensive.

A forum selection clause is invalid "if enforcement would contravene a strong public policy of the forum in which suit is brought." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972).

> "While California's consumer protection statutes cannot prevent enforcement under the FAA of a prohibition on collective actions as such, a federal court properly may consider whether such a prohibition in combination with other provisions and circumstances renders an agreement substantively unconscionable as a matter of state law." *Comb v. Paypal, Inc.*, 218 F. Supp. 2d 1165, 1175-1176, 2002 U.S. Dist. LEXIS 16364 (N.D.

Calif., 2002). If the "place and manner" restrictions of a forum selection provision are "unduly oppressive,"

See *Bolter v. Superior Court*, 87 Cal. App. 4th 900, 909-10, 104Cal. Rptr. 2d 888 (2001), or have the effect of shielding the stronger party from liability, see *Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165, 1177 (N.D. Cal. 2002), then the forum selection provision is unconscionable.

Other than PayPal being a Delaware corporation, Delaware has no relationship with the transactions at issue in this case. PayPal's is based in California. PayPal's legal team is based in California. Two Class Claimants reside in California. PayPal users' interests in being protected by California law where an out-of-state company is seizing customer funds is a greater nexus and public policy concern than enforcing a Delaware choice of law provision, where Delaware has no connection with the issues at stake in this case.

3.    *PayPal's Seizure of Funds Shocks the Conscience.*

The substantive component is satisfied by overly harsh or one-sided results that "shock the conscience." *Blake v. Ecker*, 93 Cal. App. 4th 728, 741, 113 Cal. Rptr. 2d 422 (2001). Since PayPal's Motion sought to compel Plaintiffs to

individual arbitration the Court may look at the effect that both the arbitration agreement and class action waiver have when taken together. These two provisions taken together means that PayPal could just take $10.00 out of every single one of its millions of users' accounts, raising hundreds of millions of dollars for itself without any repercussions.  Such an amount would be too small for each claimant to arbitrate, and the class action waiver would prevent the claims from being resolved en masse. The arbitration agreement goes even further preventing the use of the doctrine of estoppel to force every claimant to relitigate the issue every time. Such an effect clearly shocks the conscience of any reasonable individual or court.

There is another effect which must be raised here. When PayPal seizes money from user accounts, one of the reasons it cites is a violation of the acceptable use policy. Some actions which constitute violations of the acceptable use policy are illegal gambling and sale of illegal items such as counterfeit merchandise. By PayPal seizing the balance of an account it suspects of illegal activity it is making itself the sole beneficiary of the alleged, but unproven illegal activity, and potentially complacent in the crime.  This argument is similar to an in *pari delicto* argument.

PayPal double dips in the event it takes money from a user under its

liquidated damages policy. PayPal has already taken a transaction fee from a consumer, yet also insists on a $2,500 per occurrence liquidated damages fee. This is but further evidence of unconscionability, PayPal participates in every transaction by taking its fee, even if that transaction only allegedly violates PayPal's agreements.

4. *The Arbitration Clause Contains an Anti-Class Action Provision Which Violates California's Public Policy.*

While *Concepcion* has held that class action agreements with anti-class action provisions are lawful under the Federal Arbitration Act ("FAA"), the analysis still requires an examination of unconscionability factors under state law.

Where the agreement containing an arbitration clause is found to be unconscionable, or where the arbitration clause is itself unconscionable, agreements and/or arbitration clauses which prohibit class action lawsuits or contain a class action waiver provision may be unenforceable as violating public policy. The California Supreme Court in California Supreme Court ruled in *McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017) ruled that a contract purporting to waive a party's right to seek public injunctive relief (an injunction requiring the

defendant company to change the way it does business with all California residents) in any forum under California's Consumer Legal Remedies Act or Unfair Competition Law is unenforceable.

Similarly, the Ninth Circuit recently held that the FAA does not preempt the *McGill* rule. See *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019); *Tillage v. Comcast Corp.*, 772 Fed.Appx. 569 (9th Cir. 2019); *McArdle v. AT&T Mobility LLC*, 772 Fed.Appx. 575 (9th Cir. 2019).

Central to the Ninth Circuit's holding was the fact the *McGill* rule is a "generally applicable contract defense" that applies "equally to arbitration and non-arbitration agreements" and does not single out arbitration agreements for disfavored treatment. See *Blair, supra*, 928 F.3d at 827. Importantly in this regard, on June 8, 2020, the United States Supreme Court denied *certiorari*, refusing to review the Ninth Circuit's decisions in the *Tillage v. Comcast and McArdle v. AT&T Mobility* cases, passing up the opportunity to strike down the *McGill* rule.

The Supreme Court's refusal to wade into this debate means that the *McGill* rule remains good law, and bars companies from requiring their customers to waive their right to seek public injunctive relief. Companies must deal with the fact that a federal or California state court has the power to hear a California

consumer's claim for a public injunction that would require the company to change the way it does business with all California residents.

Here, there is no doubt thousands of consumers will be denied their rights to proceed with their claims if they cannot proceed by class action. Many consumers have low value claims, meaning they will be unable to obtain attorneys or pay arbitration fees over claims that are less than the value of the filing fee. Even a small claims action is a very limited remedy for a consumer with a low dollar claim, requiring a substantial amount of time, money and effort to recover a nominal amount of money. While permissible, it does not mean they are fair, and combined with all the other unfairness within the agreement, this clause is a further significant factor in proving unconscionability.

5. *The Arbitration fees can also greatly exceed the cost of litigation.*

Unlike the arbitration clause in *Concepcion*, which was exceptionally fair to consumers, the potential fees in arbitration are potentially tens to hundreds of thousands of dollars in any claim exceeding $10,000. Section 14.3 (c ) notes,

> If the value of the relief sought is more than $10,000 and you are able to demonstrate that the costs of arbitration will be prohibitive as compared to the costs of litigation, PayPal will pay as much of the filing, administration, and arbitrator fees as the arbitrator deems necessary to prevent the

arbitration from being cost-prohibitive.

An action filed in state or federal court has a filing fee, and possibly some other associated costs such as motion filing fees, etc.  An arbitration has significantly higher fees such as initiation fees, and arbitrators that can cost well in excess of $1,000 per hour (even split 50/50 means a party can easily pay several thousands of dollars per day for arbitrator time).  Under the arbitration agreement, any claim in excess of $10,000, requires the user to make a showing that the cost of arbitration is "prohibitive" as compared to litigation costs and PayPal is only required to pay such costs as the arbitrator deems necessary to prevent the arbitration from being cost-prohibitive.  That is, there is a cost certainty to court litigation, whereas as a consumer is required to make a showing that the costs of arbitration are "prohibitive" and the determination as to what a consumer must pay is wholly within the discretion of the arbitrator.  Potentially, in a major arbitration, a consumer could be responsible for fees several hundred times the cost of a litigation or more.  This provision while legal (see *American Express Co v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013)), also renders the arbitration clause patently unfair.

*6.    Other Violations Which Also Render the Agreements Unconscionable.*

PayPal denies users the benefit of offensive non-mutual collateral estoppel.

Paragraph 14.3 (b) states:

> The arbitrator shall not be bound by rulings in prior arbitrations involving different PayPal users, but is bound by rulings in prior arbitrations involving the same PayPal user to the extent required by applicable law.

Offensive, non-mutual collateral estoppel is a very strong protection for consumers against businesses, and PayPal has attempted to strip this legal protection from all consumers. PayPal has the right to be indemnified by users, but users have no right to be indemnified by PayPal should it commit violations (Agreement Paragraph 14.6). In the event of disputes, PayPal requires users to automatically waive California <u>Civil Code</u> § 1542 (Agreement Paragraph 14.8). Pursuant to Paragraph 15.1, there is a full waiver of liability to protect PayPal, and 15.2 waives all warranties. Section 5.5 grants PayPal a security interest in all funds held in a user's account.

-28-

**G. <u>The Entire TOS Agreement With all Members of the Public is Illusory, Thus Rendering the Entire Agreement (Including the Arbitration Clause) Void.</u>**

In the instant case, PayPal has the complete and unfettered ability to:

1. Determine whether or not a user violates the UA/AUP;

2. Freeze the user's account while PayPal conducts an internal "investigation;"

3. Refuses to tell the user the nature of the claimed violation, or permit the user to have any input in PayPal's clandestine internal "investigation" or defense/explanation to provide some form of proof to counter the undisclosed violation;

4. Identify the nature of the violation or even tell the user that the user has committed a violation other than a notice that there has been a violation;

5. Take all the money in a user's account.  Here, PayPal has granted itself the absolute authority to act as judge, jury and collection agent, leaving users with no remedy, option or even notice and opportunity to be heard.

This is not merely the case in theory, it is the case in practice, as PayPal has drained every cent out of thousands of users' accounts.  PayPal's complete,

unfettered ability to declare a violation, as well as take all of the money out of a user's account renders this contract illusory, and thus, void. According to the language of the UA PayPal has complete and unfettered discretion to freeze, investigate and drain a user's account. In practice, this process is far worse, as PayPal has consistently and arbitrarily first frozen for one hundred eighty (180) days, and then forfeited the member's entire account without explanation, or the right to even explain why the forfeiture was improper, leaving the member with the only option of hiring an attorney and going to individual arbitration, and if the claim is more than $10,000 (as is the case with the Plaintiffs in this action) having to pay attorney fees and arbitration costs or prove poverty–an entirely illusory and unfair remedy.

///

///

///

## VI.     <u>CONCLUSION</u>

For all the foregoing reasons the Court incorrectly ruled that the parties must go to arbitration and dismissed the present case.  The Court applied the Delaware law, when the court should have applied California law, as Delaware had nothing to do with the instant case, except Paypal is incorporated within Delaware.  Further, all of Paypal's terms and conditions that all users are required to follow are unconscionable.  The terms and services that Paypal force upon their users is so unfair that they must be deemed illusory and void.  Therefore, the Court improperly found that the parties must go to arbitration and dismissed the underlying case.

Dated: October 28, 2022                    By: /s/Eric Bensamochan
                                          Eric Bensamochan, Esq.
                                          Counsel for Plaintiffs

-31-

## <u>STATEMENT OF RELATED CASES</u>

Appellant contends there are no pending related cases as set forth in <u>FRAP</u>,

Rule 28-2.6.


Dated: October 28, 2022          By: /s/Eric Bensamochan
                                 Eric Bensamochan, Esq.
                                 Counsel for Plaintiffs

# CERTIFICATE OF COMPLIANCE WITH

# TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND

# TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

_X_ this brief contains   words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

__ this brief uses a monospaced typeface and contains [state the number of ] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated: October 28, 2022                    By: /s/Eric Bensamochan
                                                    Eric Bensamochan, Esq.
                                                    Counsel for Plaintiffs

-33-

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

Form 15. Certificate of Service for Electronic Filing

9th Cir. Case Number(s):

     X    I hereby certify that I electronically filed the foregoing/attached

document(s) on October   , 2022 this date with the Clerk of the Court for the

United States Court of Appeals for the Ninth Circuit using the Appellate Electronic

Filing system.

Service on Case Participants Who Are Registered for Electronic Filing:

I certify that I served the foregoing/attached document(s) via email to all

registered case participants on this date because it is a sealed filing or is

submitted as an original petition or other original proceeding and therefore

cannot be served via the Appellate Electronic Filing system.

Service on Case Participants Who Are NOT Registered for Electronic Filing:

-34-

I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants (list each name and mailing/email address): None

Description of Document(s) (required for all documents):

Appellant's Opening Brief

Dated: October 28, 2022                    By: /s/Eric Bensamochan
                                                Eric Bensamochan, Esq.
                                                Counsel for Plaintiffs

-35-

# CERTIFICATE OF COMPLIANCE WITH

# TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND

# TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

_X_ this brief contains 6013 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

__ this brief uses a monospaced typeface and contains [state the number of ] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated: October 28, 2022       By: /s/Eric Bensamochan
                               Eric Bensamochan, Esq.
                               Counsel for Plaintiffs