No. 22-15979

_____

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT OF CALIFORNIA**

_____

LENA EVANS, ET AL.
*Plaintiff – Appellant*
v.
PAYPAL, INC.
*Defendant – Appellee*

_____

APPEAL FROM A JUDGMENT OF THE DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA, THE HON. BETH
LABSON FREEMAN (NO. 5:22-CV-00248-BLF)

_____

**ANSWERING BRIEF**

_____

JOEL D. SIEGEL (SBN 155581)
joel.siegel@dentons.com
JUDITH SHOPHET SIDKOFF (SBN 267048)
judith.sidkoff@dentons.com
DENTONS US LLP
601 S. Figueroa St., Ste 2500
Los Angeles, California  90017
Telephone: 213-623-9300
Facsimile: 213-623-9924

DAVID R. SIMONTON (SBN 199919)
david.simonton@dentons.com
DENTONS US LLP
1999 Harrison Street, Ste 1300
Oakland, California 94612-4709
Telephone: 415-882-5000
Facsimile: 425-882-0300

_____

KARL M. TILLEMAN
(SBN 013435)
DENTONS US LLP
2398 E. Camelback Rd., Ste. 850
Phoenix, AZ 85016
Telephone: 602 508 3960
Facsimile: 213 623 9924

Attorneys for Defendant-Appellee, PAYPAL, INC.

123069084

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellee PayPal,

Inc. discloses that PayPal, Inc. is a wholly-owned subsidiary of PayPal Holdings,

Inc. and that there are no publicly traded corporations (domestic or foreign), other

than PayPal Holdings, Inc., that own ten percent or more of PayPal, Inc.'s stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ............................................................................ iv

INTRODUCTION ........................................................................................... 1

STATEMENT OF JURISDICTION ................................................................... 2

ISSUES PRESENTED .................................................................................... 3

STATEMENT OF THE CASE .......................................................................... 3

    I.     Background .......................................................................... 3

          A.     Appellants' PayPal Accounts and Acceptance of the User Agreement .................................................................. 3

          B.     Relevant UA Terms ................................................... 4

    II.    Prior Proceedings ............................................................... 6

          A.     The Complaint ........................................................... 6

          B.     The Related Case Order .............................................. 7

          C.     The District Court's Standing Order ............................ 8

          D.     The Subject Motion to Compel Arbitration .................. 8

          E.     The District Court's Order Compelling Arbitration ....... 9

    III.   Additional Related Cases .................................................. 11

SUMMARY OF ARGUMENT ........................................................................ 12

STANDARD OF REVIEW ............................................................................ 13

ARGUMENT ............................................................................................... 15

    I.     Appellants Entered into Binding Arbitration Agreements with PayPal ........................................................................ 15

II.   The District Court Correctly Applied Delaware Law ........................19

      A.   The UA's Choice-of-Law Provision Is Permissible Under
           the FAA ...................................................................................19

      B.   The District Court Correctly Analyzed the Applicability
           of the Delaware Choice-of-Law Provision .............................21

           1.   PayPal Has a Substantial Relationship to Delaware ......22

           2.   Delaware Law Is Compatible with Fundamental
                California Policy ............................................................23

           3.   *McGill* Is Inapplicable Because Plaintiffs Do Not
                Seek Public Injunctive Relief ........................................25

      C.   California Does Not Have a Materially Greater Interest
           Than Delaware ........................................................................29

III.  The Agreement to Arbitrate Is Valid and Enforceable ......................30

      A.   Procedural Unconscionability Is Not Present ...........................31

      B.   Substantive Unconscionability Is Similarly Absent ................33

IV.   The District Court Properly Declined to Decide Appellants'
      Merits Arguments ..............................................................................35

V.    The Parties Agreed that the District Court Was Authorized to
      Decide Arbitrability ..........................................................................36

VI.   The District Court Correctly Applied Local Rules, and
      Appellants Otherwise Waived Any Attendant Challenges ................37

      A.   The District Was Within Its Discretion to Relate the
           *Cheng* and *Evans* Cases ........................................................38

      B.   The District Court's Standing Order on Page Limits Did
           Not Prejudice Appellants .......................................................39

CONCLUSION ....................................................................................................41

STATEMENT OF RELATED CASES ................................................................42

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Abat v. Chase Bank USA, N.A.*,
738 F. Supp. 2d 1093 (C.D. Cal. 2010) ............................................................29

*ABF Cap. Corp. v. Osley*,
414 F.3d 1061 (9th Cir. 2005) ........................................................21, 22, 23, 29

*In re Ahn*,
804 F. App'x 541 (9th Cir. 2020) ................................................................39, 41

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) .........................................................................................19

*Andre v. Dollar Tree Stores, Inc.*,
No. 18-142-MN-CJB, 2019 WL 2617253 (D. Del. June 26, 2019) ..................32

*Armendariz v. Foundation Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ..................................................................................25, 32

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)...........................................................................20, 23, 24, 31

*Benson v. Casa de Capri Enters., LLC*,
980 F.3d 1328 (9th Cir. 2020) .........................................................................14

*Boghos v. Certain Underwriters at Lloyd's of London*,
36 Cal. 4th 495 (2005) .....................................................................................24

*Brazil v. Dell*,
No. C-07-01700 RMW, 2007 WL 2255296 (N.D. Cal. Aug. 3, 2007) .............................................................................................................24

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .........................................................................15

*Brooks v. It Works Mktg., Inc.*,
  No. 1:21-cv-01341-DAD-BAK, 2022 WL 2217253 (E.D. Cal. June
  21, 2022) .................................................................................................28

*Buckeye Check Cashing v. Cardegna*,
  546 U.S. 440 (2006).................................................................................36

*Bushley v. Credit Suisse First Boston*,
  360 F.3d 1149 (9th Cir. 2004) ................................................................14

*Capriole v. Uber Techs., Inc.*,
  7 F.4th 854 (9th Cir. 2021) ...............................................................26, 27

*Cheng v. PayPal, Inc.*,
  No. 21-cv-03608-BLF, 2022 WL 126305 (N.D. Cal. Jan. 13, 2022) .........*passim*

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ................................................................40

*Coface Collections N. Am. Inc. v. Newton*,
  430 F. App'x 162 (3rd Cir. 2011)............................................................23

*Cordas v. Uber Techs., Inc.*,
  228 F. Supp. 3d 985 (N.D. Cal. 2017)....................................................17

*Cottrell v. AT&T Inc.*,
  No. 20-16162, 2021 WL 4963246 (9th Cir. Oct. 26, 2021) ...............26, 27

*Crypto Asset Fund, LLC v. MedCredits, Inc.*,
  No. 19cv1869-LAB (MDD), 2020 WL 1506220 (S.D. Cal. Mar.
  30, 2020) .................................................................................................18

*Davis v. USA Nutra Labs*,
  303 F. Supp. 3d 1183 (D.N.M. 2018)......................................................18

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985).................................................................................14

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007) ................................................................40

*DIRECTV, Inc. v. Imburgia*,
  577 U.S. 47 (2015)................................................................................9, 19

*Ebner v. Fin. Architects, Inc.*,
    763 F. Supp. 2d 697 (D. Del. 2011)....................................................................20

*Ferdik v. Bonzelet*,
    963 F.2d 1258 (9th Cir. 1992) ...........................................................................40

*First Intercontinental Bank v. Ahn*,
    798 F.3d 1149 (9th Cir. 2015) ...........................................................................23

*Fleck, d/b/a Fleck's Carpet v. J.A. Moore & Sons, Inc.*,
    No. 98-08-069, 1999 WL 1847435 (Del. Com. Pl. Jan. 29, 1999) ...................33

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ..............................................................18

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)............................................................................................31

*Graham v. State Farm Mut. Auto. Ins. Co.*,
    565 A.2d 908 (Del. 1989) .....................................................................23, 31, 33

*Green Tree Fin. Corp. v. Randolph*,
    531 U.S. 79 (2000)............................................................................................34

*Hambrecht & Quist Venture Partners v. Am. Med. Int'l. Inc.*,
    38 Cal. App. 4th 1532 (1995) ...........................................................................21

*Harris v. Green Tree Fin. Corp.*,
    183 F.3d 173 (3d Cir. 1999) .............................................................................31

*Hodges v. Comcast Cable Commc'ns, LLC*,
    21 F.4th 535 (9th Cir. 2021) ................................................................25, 26, 27

*Hoekman v. Tamko Bldg. Prods.*,
    No. 2:14-cv-015810TLN-KJN, 2015 WL 9591471 (E.D. Cal. Aug.
    24, 2015) ...........................................................................................................30

*Houtchens v. Google, LLC*,
    No. 22-cv-02638-BLF, 2023 WL 122393 (N.D. Cal. Jan. 6, 2023)..................18

*James v. Comcast Corp.*,
    No. 16-cv-02218-EMC, 2016 WL 4269898 (N.D. Cal. Aug. 15,
    2016) .................................................................................................................32

vi

*Jeong v. Nexo Cap. Inc.*,
   21-cv-02392-BLF, 2022 WL 3590329 (N.D. Cal. Aug. 22, 2022) ................... 27

*Kaul v. Mentor Graphics Corp.*,
   730 Fed. Appx. 437 (9th Cir. 2018) .................................................................. 22

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005), aff'd, 252 F. App'x 777
   (9th Cir. 2007) ................................................................................................. 24

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
   363 F.3d 1010 (9th Cir. 2004) ........................................................................ 15

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
   514 U.S. 52 (1995) ........................................................................................... 20

*Maxwell v. Cellco P'ship*,
   No. 19-152-RGA, 2019 WL 5587313 (D. Del. Oct. 30, 2019) ....................... 31

*Maynard v. PayPal, Inc.*,
   No. 3:18-CV-0259-D, 2019 WL 3552432 (N.D. Tex. Aug. 5,
   2019) ................................................................................................................. 20

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) ................................................................................. *passim*

*McGrath v. Doordash, Inc.*,
   No. 19-cv-05279-EMC, 2020 WL 6526129 (N.D. Cal. Nov. 5,
   2020) ................................................................................................................. 19

*Mikkilineni v. PayPal, Inc.*,
   No. N19C0950123 PRW CCLD, 2021 WL 2763903 (Del. Super.
   Ct. Jul. 1, 2021) ......................................................................................... 31, 32

*Miranda v. S. Pac. Transp. Co.*,
   710 F.2d 516 (9th Cir. 1983) .......................................................................... 38

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ................................................................... 33, 34

*Mundi v. Union Sec. Life Ins. Co.*,
   555 F.3d 1042 (9th Cir. 2009) ........................................................................ 15

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) ....................................................20, 24

*Nedlloyd Lines B.V. v. Sup. Ct.*,
    3 Cal. 4th 459 (1992) .......................................................................22

*Newell Rubbermaid Inc. v. Storm*,
    No. 9398–VCN, 2014 WL 1266827 (Del. Ch. Mar. 27, 2014).........16

*Nezri v. PayPal, Inc.*,
    No. CV 22-2112 DSF, 2022 WL 16918024 (C.D. Cal. June 13,
    2022) ..................................................................................*passim*

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) .........................................................14

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods*,
    *LLC*,
    31 F.4th 651 (9th Cir. 2022) ...........................................................14

*Perez v. Discover Bank*,
    No. 20-cv-06896-SI, 2021 WL 4339139 (N.D. Cal. Sept. 23, 2021)
    (partial reconsideration granted, 2022 WL 344973 (N.D. Cal. Feb.
    4, 2022) ..........................................................................24, 29

*Pick v. Discover Fin. Servs.*,
    No. Civ.A 00-935-SLR, 2011 WL 1180278 (D. Del. Sept. 28,
    2011) ...................................................................................21

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev., LLC*,
    55 Cal. 4th 233 (2012) .....................................................................23

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)......................................................................2, 36

*Quackenbush v. Allstate Ins. Co.*,
    121 F.3d 1372 (9th Cir. 1997) .........................................................14

*Roberts v. Obelisk, Inc.*,
    No. 18CV2898-LAB, 2019 WL 1902605 (S.D. Cal. Apr. 29, 2019) ...............18

*Ruiz Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) .........................................................14

*Sands v. Union Pac. R.R. Co.*,
  Nos. N17C-06-249 ALR, N17C-07-069 ALR, 2017 WL 5664748
  (Del. Super. Ct. Nov. 20, 2017) ........................................................29

*Schoenberg v. Exportadora de Sal, S.A. de C.V.*,
  930 F.2d 777 (9th Cir. 1991) .............................................................14

*Shearson/Am. Express, Inc. v. McMahon*,
  482 U.S. 220 (1987)............................................................................14

*Shivkov v. Artex Risk Solutions, Inc.*,
  974 F.3d 1051 (2020)..........................................................................13

*Techject, Inc. v. PayPal Holdings, Inc.*,
  No. 1:17-CV-04058-ELR, 2018 WL 9812751 (N.D. Ga. Aug. 10,
  2018) ...................................................................................................20

*Tulowitzki v. Atl. Richfield Co.*,
  396 A.2d 956 (Del. 1978) ...................................................................30

*Vandenberg v. Sup. Ct.*,
  21 Cal. 4th 815 (1999) ........................................................................35

*Wang Labs. v. Kagan*,
  990 F.2d 1126 (9th Cir. 1993) ............................................................29

*Washington Mut. Bank, FA v. Sup. Ct.*,
  24 Cal. 4th 906 (2001) ........................................................................23

*Wells v. Merit Life Ins. Co.*,
  671 F. Supp. 2d 570 (D. Del. 2009).....................................................31

**Statutes**

9 U.S.C. § 2 ..............................................................................12, 14, 24

28 U.S.C. § 2071 .....................................................................................38

28 U.S.C. § 2072 .....................................................................................38

28 U.S.C. § 2075 .....................................................................................38

California Business & Professions Code § 17200 ....................................7

ix

California Civil Code § 1668 ...................................................................24

Electronic Funds Transfer Act ....................................................6, 11, 30

Federal Arbitration Act .................................................................*passim*

Governing Law section .............................................................................6

Racketeer Influenced and Corrupt Organizations Act ("RICO") .................6, 11, 30

## Other Authorities

9th Circuit of California
  Rule 28.2-2.........................................................................................2

Federal Rule of Civil Procedure 83 ..................................................38, 40

Federal Rule of Civil Procedure 83(a) .....................................................38

Northern District of California
  Local Rule 3-12................................................................................7, 38

Northern District of California
  Local Rule 7-11....................................................................................40

**INTRODUCTION**

In a thorough, thoughtful opinion, the district court analyzed the legal arguments and uncontroverted factual record before it, and found that Appellants each had accepted a User Agreement containing an agreement to arbitrate their disputes with PayPal, Inc. ("PayPal") on an individual basis. Applying the Federal Arbitration Act and Delaware law (as the parties' contract requires), the district court held that the arbitration provision was valid and enforceable. The court's order compelling arbitration ("Arbitration Order") is consistent with two other recent federal district court cases that, based on a straightforward application of Supreme Court and Ninth Circuit authority, upheld the very arbitration agreement at issue here. *Cheng v. PayPal, Inc.*, No. 21-cv-03608-BLF, 2022 WL 126305 (N.D. Cal. Jan. 13, 2022); *Nezri v. PayPal, Inc.*, No. CV 22-2112 DSF (JPRx), 2022 WL 16918024 (C.D. Cal. June 13, 2022). This synchronicity is unsurprising in light of PayPal's clear presentation of the arbitration provision to its users (*i.e.*, Appellants), the opt-out right afforded to them, a fair cost-shifting provision, the accountholder friendly venue clause, and the mutual nature of the arbitration provision's terms.

Appellants offer no justification to ignore the well-settled authorities on which the district court relied in granting PayPal's motion to compel arbitration. Rather, Appellants cite outdated cases that have no persuasive or precedential

1

value, and otherwise make no attempt to distinguish the binding authorities that mandate the district court's decision. They choose to instead belatedly and half-heartedly complain about page limits and other administrative matters within the district court's broad discretion. Appellants have long waived whatever objections might lie, if any, to those procedural issues, and they resulted in no prejudice in any event.

At its core, Appellants' appeal is a forced attempt to litigate the merits of the underlying complaint, rather than to argue against the validity or enforceability of the arbitration agreement. This is laid bare by the Opening Brief's "Statement of the Case," which all but disregards Appellants' position on the motion to compel arbitration and instead focuses on the factual allegations behind Appellants' causes of action. As the Supreme Court has explicitly ruled, however, a litigant's substantive claims are not to be decided by a court ruling on a motion to compel arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 404 (1967). What *can* be decided, in contrast, is that the Agreement to Arbitrate is valid and enforceable. This Court should do exactly that and affirm.

## STATEMENT OF JURISDICTION

Pursuant to Circuit Rule 28.2-2, Appellee agrees with Appellants' Jurisdictional Statement regarding: (a) the statutory basis of subject matter jurisdiction of the district court; (b) the basis for claiming that the Arbitration

Order is final and that this Court has jurisdiction; and (c) the timeliness of this appeal.

## ISSUES PRESENTED

1. Whether the district court correctly found that the parties' entered into an agreement to arbitrate.
2. Whether the subject agreement's Delaware choice-of-law provision was correctly applied by the District Court.
3. Whether the agreement to arbitrate is valid and enforceable.

## STATEMENT OF THE CASE

Appellants' Statement of the Case is a general restatement of the merits of the claims in their underlying Complaint and omits many undisputed facts that drive the decision here, particularly with respect to the Agreement to Arbitrate itself. Accordingly, PayPal offers the following supplemental background statement.

### I. Background

#### A. Appellants' PayPal Accounts and Acceptance of the User Agreement

It is undisputed that each of Appellants Lena Evans, Roni Shemtov, and Shbadan Akylbekov[1] signed up for one or more PayPal accounts to operate their businesses. (4-ER-778-779, 782-784.) Each Appellant expressly and necessarily

---

[1] Appellants' Complaint erroneously referred to Shabdan Akylbekov as Shbadan Akylbekov.

agreed to the PayPal User Agreement ("UA") when doing so. No user is able to sign up for a PayPal account without agreeing to the UA. (2-ER-134, 4-ER-780.) As part of the account registration process, each Appellant was given the opportunity to review the UA—which provides the terms and conditions governing the use of PayPal's services—through either a scroll box on the registration page or via a hyperlink. (2-ER-123, 135 ¶ 5.) Each Appellant assented to the UA by (1) checking a box next to language confirming that they had read and agreed to the UA; and (2) clicking a button stating "Agree and Create Account" on the registration form. (2-ER-122-123; 2-ER-135 ¶5.)

### B. Relevant UA Terms

The UA contains a conspicuous, clearly-identified "Agreement to Arbitrate," which is referenced in bold and hyperlinked and, when clicked, moves an accountholder directly to the Agreement to Arbitrate within the UA, which provides as follows:

> You and PayPal each agree that any and all disputes or claims that have arisen or may arise between you and PayPal, including without limitation federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved exclusively through final and binding arbitration, rather than in court, except that you may assert claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non representative) basis. This Agreement to Arbitrate is intended to be broadly interpreted. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.

(2-ER-235.)  The bilateral Agreement to Arbitrate further provides that any arbitration will be conducted by and in accordance with the American Arbitration Association's Rules in the county in which the user resides or another mutually agreed location.  (2-ER-236-237.)

The Agreement to Arbitrate includes an opt-out provision, distinct and set apart from other terms.  (2-ER-239.)  Accountholders who choose to opt out of the Agreement to Arbitrate can elect to maintain their PayPal accounts or discontinue them.  (2-ER-138, 239.)  Appellants were advised of and had the opportunity to opt out of the Agreement to Arbitrate, though none chose to do so.  (2-ER-140.)

The UA also includes a class action waiver whereby users agree to resolve disputes by arbitration on an individual basis ("Class Waiver"):

> You and PayPal agree that each of us may bring claims against the other only on an individual basis and not as a plaintiff or class member in any purported class or representative action or proceeding. Unless both you and PayPal agree otherwise, the arbitrator(s) may not consolidate or join more than one person's or party's claims and may not otherwise preside over any form of a consolidated, representative or class proceeding. Also, the arbitrator(s) may award relief (including monetary, injunctive and declaratory relief) only in favor of the individual party seeking relief and only to the extent necessary to provide relief necessitated by that party's individual claim(s). Any relief awarded cannot affect other PayPal customers.

(2-ER-235-236.)

Under the UA, users also agree not to use PayPal's payment platform for certain enumerated "Restricted Activities" described therein, including activities that breach PayPal's Acceptable Use Policy ("AUP"). (2-ER-217-219.) If a user engages in any Restricted Activities, PayPal may hold the balance in the user's PayPal account for up to 180 days to protect against risk and in cases of AUP violations. (2-ER-219.) The UA further provides that sellers who breach the AUP will be liable to PayPal for liquidated damages for each violation based on a reasonable minimum estimate of PayPal's actual damages. (2-ER-220.)

Every relevant iteration of the UA also contains a Delaware choice-of-law provision within its Governing Law section:

> You agree that, except to the extent inconsistent with or preempted by federal law and except as otherwise stated in this user agreement, the laws of the State of Delaware, without regard to principles of conflict of laws, will govern this user agreement and any claim or dispute that has arisen or may arise between you and PayPal.

(2-ER-243.)

## II. Prior Proceedings

### A. The Complaint

Appellants filed their lawsuit (hereafter at times referred to the "*Evans*" action) on January 13, 2022. Their Complaint asserted claims for conversion, civil violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), violation of the Electronic Funds Transfer Act ("EFTA"), breach of

written contract, breach of fiduciary duty, violation of California Business & Professions Code § 17200, unjust enrichment, declaratory relief, and accounting. All of the claims in *Evans* arise out of PayPal's assessment of liquidated damages subsequent to Appellants' respective violations of the UA.

### B. The Related Case Order

On February 4, 2022, shortly after the filing of the Complaint, PayPal, pursuant to Civil Local Rule 3-12 of the Northern District of California, filed an administrative motion to consider whether *Evans* was related to a prior action filed by an absent member of the *Evans*' putative class, *Cheng v. PayPal, Inc.*, and which had been adjudicated by Hon. Beth Labson Freeman. (SER-10-13.)

Both the *Evans* and *Cheng* complaints asserted violations of the same provision of the same UA, involved substantially the same parties (the same defendant and a member of the *Evans* putative class), and challenged the enforceability of the UA's Agreement to Arbitrate. On the same day that Appellants filed their initial Complaint, the Northern District of California granted PayPal's motion to compel arbitration in *Cheng*. 2022 WL 126305, at *7. In so holding, the *Cheng* court found that claims regarding PayPal's liquidated damages policy were within the scope of the Agreement to Arbitrate, and that the arbitration provision was valid and enforceable under Delaware law. *Id*. at *5.

Appellants were afforded an opportunity to challenge PayPal's motion to relate but elected not to. Instead, Appellants' February 10, 2022 response on the issue declared that the matter was fully within the district court's discretion and pledged that Appellants would "adhere to whatever decision the court deems just." (SER-8.) In a February 14, 2022 order, the district court found that *Evans* was indeed related to *Cheng*; the *Evans* action was subsequently reassigned to Judge Freeman. (SER-4.) Appellants did not seek reconsideration of that order.

### C. The District Court's Standing Order

Judge Freeman's Standing Order re Civil Cases expressly provides that, absent leave of court, "the page limits for all other types of motions and proceedings […] shall be 10 pages for the motion or opening brief, 10 pages for the opposition or response brief, and 5 pages for the reply brief. Motions subject to the 10-page limit include […] motions to compel arbitration."

Neither party sought leave of the district court to exceed the page limit set forth in the Standing Order in connection with any submission.

### D. The Subject Motion to Compel Arbitration

On March 16, 2022, PayPal filed a motion to compel the individual, non-class arbitration of Appellants' claims pursuant to the Agreement to Arbitrate (the "Motion").

On April 22, 2022, Appellants filed a 26-page opposition to PayPal's Motion in violation of the district court's Standing Order. The same day, the

district court issued an order striking the opposition brief and directing Appellants to file a new compliant brief within five days.  Appellants filed a second opposition brief on April 26, 2022, in which they sought to evade the Agreement to Arbitrate on multiple grounds, including by challenging the UA's choice-of-law provision and arguing both procedural and substantive unconscionability.[2]  The opposition did not address or otherwise attempt to distinguish the district court's recent order compelling arbitration in the related *Cheng* case.  (1-ER-5.)

### E.    The District Court's Order Compelling Arbitration

On June 2, 2022, the district court issued the Arbitration Order compelling individual, non-class arbitration of all claims by each Appellant.  As a threshold matter, the district court recognized that the Federal Arbitration Act ("FAA") governed the UA—a point which Appellants do not dispute—and then found that the UA's Delaware choice-of-law provision was enforceable on two grounds.

First, the FAA "allows parties to an arbitration contract considerable latitude to choose what law governs some or all of its provisions, including [...] enforceability of a class-arbitration waiver."  *DIRECTV, Inc. v. Imburgia*, 577 U.S.

---

[2]  The district court also struck PayPal's initial Reply Memorandum in Support of its Motion to Compel for noncompliance with the Standing Order's footnote formatting instruction.  PayPal was ordered to file a compliant brief within two days, which it did.

47, 53-53 (2015). The district court acknowledged that the UA contains such a permissible choice-of-law provision. (1-ER-6-7.)

Second, even applying a California choice-of-law analysis, the district court determined that PayPal's incorporation "in Delaware creates a substantial relationship between this dispute and the parties and transactions at issue that would lead to applying Delaware substantive law." (1-ER-6.) Relying on Ninth Circuit precedent, the district court rejected Appellants' argument that California's public policy against waivers of public injunctive relief should otherwise result in the application of California substantive law, noting that the so-called *McGill* rule "does not apply in this case where Plaintiffs seek private injunctive relief against PayPal's liquidated damages provision in the AUPs to which Plaintiffs individually agreed." (1-ER-6-7.)[3]

Next, the district court found that the dispute fell within the broad scope of the Agreement to Arbitrate. (1-ER-7-8, 10.) Notably, Appellants did not dispute that conclusion below, and likewise concede it on appeal.

In addition, the district court concluded that PayPal met its burden to show Appellants assented to the Agreement to Arbitrate. In so finding, the district court

---

[3] The *McGill* rule (as articulated in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017)) prohibits the contractual waiver of public injunctive relief in all forums as against a fundamental policy of California; its non-application is addressed in detail in Argument Section II.B.3.

evaluated the evidence submitted by PayPal in the form of a declaration detailing the sign-up process, alongside Appellants' lack of dispute about having completed that process. (1-ER-4, 7-8.)

After methodically considering each of the multiple arguments raised by Appellants regarding the purported procedural and substantive unconscionability of the Agreement to Arbitrate, the district court concluded that Appellants failed to meet its burden to demonstrate either type of unconscionability.

Having determined that the Agreement to Arbitrate is valid and enforceable, the district court dismissed the case without prejudice to filing a later action to confirm or vacate the arbitration award.

## III.  Additional Related Cases

The Arbitration Order is one of three recent decisions by federal district courts in California upholding the Agreement to Arbitrate. As indicated, the Northern District of California compelled arbitration of claims arising out of PayPal's assessment of liquidated damages in the related *Cheng* case. 2022 WL 126305, at *7. And on the heels of the Arbitration Order in this matter, the Central District of California enforced PayPal's Agreement to Arbitrate on June 13, 2022, in *Nezri v. PayPal*, which involved copycat RICO, EFTA, and UCL claims similarly arising out the UA and implicating PayPal's AUP. 2022 WL 16918024, at *7. The orders compelling arbitration in *Cheng* and *Nezri* were not appealed.

## SUMMARY OF ARGUMENT

The Arbitration Order correctly rejected each of Appellants' arguments regarding the existence and enforceability of the Agreement to Arbitrate. The Argument portion of this brief details how the district court properly compelled Appellants to individually arbitrate their claims pursuant to an arbitration provision in their respective UAs.

Section I explains that PayPal provided evidence sufficient to show that each Appellant entered into the UA and, by extension, the Agreement to Arbitrate. The process by which each Appellant opened their respective accounts remains undisputed.

Section II discusses the district court's proper application of Delaware substantive law, in accordance with the UA's choice-of-law provision. Choice-of-law provisions are expressly contemplated by and enforceable under the FAA, which preempts potentially conflicting state law and obviates the need to engage in a choice-of-law inquiry. Nevertheless, the outcome remains the same even under a California choice-of-law analysis because (i) a substantial relationship exists between Delaware and PayPal, and (ii) Appellants seek only private injunctive relief. No fundamental California policy is implicated, let alone contradicted, by applying Delaware law to the UA.

Section III explains why Appellants failed to meet their burden to show either procedural or substantive unconscionability.  As a result, the district court correctly found that the Agreement to Arbitrate is both valid and enforceable.

Section IV dispatches Appellants' efforts to adjudicate the merits of the underlying action in the context of a motion to compel arbitration, as such attempts have been flatly rejected by the Supreme Court.  Merits arguments are contractually reserved for determination by an arbitrator.

Section V briefly clarifies the absence of any dispute with respect to the Court's authority.  There is no question that the district court was authorized to (and did) decide arbitrability.

Section VI addresses Appellants' arguments regarding page limits and related cases, newly raised under the guise of the sufficiency of evidence in the record.  Appellants waived these otherwise meritless arguments by failing to assert them below.

This Court should affirm the district court's decision to compel the individual arbitrations to which Appellants agreed when opening their accounts with PayPal.

## STANDARD OF REVIEW

The Ninth Circuit reviews de novo a district court's decision to grant or deny a motion to compel arbitration.  *Shivkov v. Artex Risk Solutions, Inc.*, 974 F.3d

1051, 1058 (2020); *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152

(9th Cir. 2004). Similarly, whether the district court erred when it concluded that

Delaware law (not California law) applies is a question of law subject to de novo

review. *Schoenberg v. Exportadora de Sal, S.A. de C.V.,* 930 F.2d 777, 782 (9th

Cir. 1991). A district court's interpretation of contract provisions is also reviewed

de novo. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

The Ninth Circuit reviews a district court's determination of underlying factual

issues for clear error. *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee

Foods, LLC,* 31 F.4th 651, 663 (9th Cir. 2022); *Ruiz Torres v. Mercer Canyons

Inc.,* 835 F.3d 1125, 1132 (9th Cir. 2016).

      An arbitration agreement governed by the FAA is presumed to be valid and

enforceable. 9 U.S.C. § 2; *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220,

226-27 (1987). "Generally, 'as a matter of federal law, any doubts concerning the

scope of arbitrable issues should be resolved in favor of arbitration.'" *Benson v.

Casa de Capri Enters., LLC*, 980 F.3d 1328, 1330-31 (9th Cir. 2020) (quoting

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

The FAA "leaves no place for the exercise of discretion by a district court, but

instead mandates that district courts *shall* direct the parties to proceed to

arbitration" on issues they agreed to arbitrate. *Quackenbush v. Allstate Ins. Co*.,

121 F.3d 1372, 1380 (9th Cir. 1997) (quoting *Dean Witter Reynolds, Inc. v. Byrd*,

470 U.S. 213, 218 (1985)) (emphasis in original); *see also Lifescan, Inc. v. Premier Diabetic Servs., Inc*., 363 F.3d 1010, 1012 (9th Cir. 2004) (if a valid arbitration agreement exists, "the court must order the parties to proceed to arbitration … in accordance with the terms of their agreement").

## ARGUMENT

Under the FAA, courts "must determine two 'gateway' issues [when deciding a motion to compel arbitration]: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "In determining whether parties have agreed to arbitrate a dispute, [courts] apply general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co*., 555 F.3d 1042, 1044 (9th Cir. 2009) (internal quotation marks omitted).

## I. Appellants Entered into Binding Arbitration Agreements with PayPal

In support of its Motion to Compel Arbitration, PayPal provided sufficient, undisputed evidence of an Agreement to Arbitrate between each Appellant and PayPal. PayPal presented a declaration from its knowledgeable employee (hereafter the "Employee Declaration"), including images detailing the process by which each Appellant opened their respective accounts and necessarily accepted

the UA in so doing.  (2-ER-133-141.)  As the Employee Declaration explained, to open their PayPal accounts, each Appellant was required to agree to the UA.  (2-ER-135 ¶ 5.)  Appellants were afforded the opportunity to review the UA via a scroll box and/or hyperlink at the time of registration, even if they chose not to.  (*Id*. ¶¶ 5-6.)  Not only were the Agreement to Arbitrate and Class Waiver called out in the introductory paragraphs of the UA, both provisions were conspicuously demarcated and set apart from other terms in the UA.  (2-ER-137 ¶¶ 13-14.)  Thus, Appellants were "on notice that [they were] modifying [their] legal rights[.]"  *Cheng*, 2022 WL 126305, at *4 (quoting *Newell Rubbermaid Inc. v. Storm*, No. 9398–VCN, 2014 WL 1266827, at *7 (Del. Ch. Mar. 27, 2014)); (1-ER-6-7).  They then manifested their assent by checking a box indicating that they "read and agree[d] to the [UA]" and clicking a button labeled "Agree and Create Account."  (2-ER-135 ¶ 5.)  As explained in the UA, each Appellant also had the right and opportunity to—but did not—opt out of the Agreement to Arbitrate by giving timely notice to PayPal in accordance with the opt-out provision's terms.  (2-ER-138-140 ¶¶ 15, 23.)[4]

Importantly, in their Complaint and Opposition to PayPal's Motion, Appellants freely admitted to opening PayPal accounts and did not dispute that they

---

[4] As discussed below in Section III.A., this opt-out provision dispels any notion of procedural unconscionability and supports the enforcement of arbitration.

engaged in the process described in the Employee Declaration, i.e., that they affirmatively manifested their assent to the UA by checking boxes and clicking buttons as required. (2-ER-85-91, 4-ER-778-780.) This evidence, on which the district court relied, clearly demonstrated that Appellants manifested their assent to arbitrate the underlying dispute with PayPal. Thus, the district court properly held that "[d]eclarations detailing a customer sign-up process that includes assenting to an arbitration agreement, along with allegations that Plaintiffs opened such accounts, are sufficient to meet a movant's initial burden to show assent to arbitration." (1-ER-7 (*citing Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 989–90 (N.D. Cal. 2017) and *Cheng v. PayPal, Inc.,* No. 21-CV-03608-BLF, 2022 WL 126305, at *3 (N.D. Cal. Jan. 13, 2022).)

Appellants' vague contention that "applicable statutes"—which they fail to identify—supposedly "require the production of a record that the parties have entered into an agreement" ignores the reality that PayPal presented exactly that evidence. (Appellants' Brief ("Br.") at 14.) And far from merely "rel[ying] upon an unreported earlier PayPal case," as Appellants contend, the district court's ruling cited to a reported opinion (*Cordas*) and is in line with the approach taken by other courts routinely finding that declarations and screenshot evidence submitted by knowledgeable employees are sufficient to show contract formation through an online sign-up process.

Indeed, courts in this Circuit and throughout the country have "no difficulty concluding that a valid arbitration agreement exists" when provided with a declaration outlining that all users were required to affirmatively agree to terms as part of a company's standard online process during the relevant time period. *Crypto Asset Fund, LLC v. MedCredits, Inc.*, No. 19cv1869-LAB (MDD), 2020 WL 1506220, at *4 (S.D. Cal. Mar. 30, 2020) (holding declaration was sufficient to establish existence of arbitration agreement even in absence of any "formal document"); *see also Houtchens v. Google, LLC*, No. 22-cv-02638-BLF, 2023 WL 122393, *3 (N.D. Cal. Jan. 6, 2023) (compelling arbitration based on declaration with images of "substantially similar" screen that plaintiffs would have seen when creating accounts); *Roberts v. Obelisk, Inc.*, No. 18CV2898-LAB (BGS), 2019 WL 1902605, at *6 (S.D. Cal. Apr. 29, 2019) (finding employee declaration evidencing online transactions and stating that customers were required to accept terms to complete transaction sufficient to show assent); *Fteja v. Facebook, Inc.,* 841 F. Supp. 2d 829, 834 (S.D.N.Y. 2012) (holding declarations by knowledgeable employees, coupled with website screenshots, were sufficient to show forum selection agreement existed); *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1191 (D.N.M. 2018) (*citing Cordas and Fteja*) (finding screenshots of defendant's website and terms of use, together with employee declaration about such evidence

sufficient to prove agreement). Comparable declarations were also accepted in both *Cheng* and *Nezri*.

## II. The District Court Correctly Applied Delaware Law

### A. The UA's Choice-of-Law Provision Is Permissible Under the FAA

It is undisputed that the FAA applies to the Agreement to Arbitrate. The UA unequivocally involves interstate commerce, as Appellants (residing in California and Illinois) utilized the online payment services of PayPal (a Delaware corporation) to exchange money with other users across the U.S. (2-ER-134, 4-ER-778-779); *see Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-77 (1995) (FAA's "involving commerce" requirement extends to limits of Congress' Commerce Clause powers). Indeed, the UA expressly provides that the "[FAA] governs the interpretation and enforcement of this Agreement to Arbitrate," leaving no doubt over its applicability. (2-ER-235); *see McGrath v. Doordash, Inc.*, No. 19-cv-05279-EMC, 2020 WL 6526129, at *5 (N.D. Cal. Nov. 5, 2020) (applying FAA where parties voluntarily elected it would govern).

And as recognized by the U.S. Supreme Court and this Circuit, the FAA affords parties to an arbitration "considerable latitude to choose what law governs some or all of its provisions, including the law governing enforceability of a class-arbitration waiver." *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 53-54 (2015)

(upholding choice-of-law and class arbitration waiver provision); *see Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1228 (9th Cir. 2013) (same).

Consistent with this principle, the UA contains a Delaware choice-of-law provision, which in turn governs the interpretation and validity of the UA:  "You agree that… the laws of the State of Delaware, without regard to principles of conflicts of laws, will govern this user agreement and any claim or dispute that has arisen or may arise between you and PayPal."  (2-ER-243); *see Ebner v. Fin. Architects, Inc*., 763 F. Supp. 2d 697, 700 (D. Del. 2011) ("When an agreement contains both a choice-of-law clause and an arbitration clause, the […] court will apply the substantive law of the state named in the choice of law clause") (citing *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 63-64 (1995)).

Multiple courts have uniformly interpreted PayPal's UA in accordance with its Delaware choice-of-law provision.  *See, e.g., Cheng*, 2022 WL 126305, at *2; *Nezri*, 2022 WL 16918024, *3-4; *Maynard v. PayPal, Inc*., No. 3:18-CV-0259-D, 2019 WL 3552432 at *5 (N.D. Tex. Aug. 5, 2019); *Techject, Inc. v. PayPal Holdings, Inc*., No. 1:17-CV-04058-ELR, 2018 WL 9812751, at *2 (N.D. Ga. Aug. 10, 2018).

Moreover, both the FAA and Delaware law permit class waivers, preempting and refuting Appellants' conflicting arguments regarding California law.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (FAA

preempts California law regarding class waivers because the latter "interfere[s] with fundamental attributes of arbitration and thus create[s] a scheme inconsistent with the FAA"); *Pick v. Discover Fin. Servs.*, No. Civ.A 00-935-SLR, 2011 WL 1180278, at \*5 (D. Del. Sept. 28, 2011) ("it is generally accepted that arbitration clauses are not unconscionable because they preclude class actions"). Accordingly, this Court need not consider California's choice-of-law rules or how the Class Waiver would be treated under California law.

### B. The District Court Correctly Analyzed the Applicability of the Delaware Choice-of-Law Provision

Even if this Court were to indulge Appellants and conduct a California choice-of-law analysis, Delaware state law would still apply. California's choice-of-law analysis "reflects a strong policy favoring enforcement of [choice-of-law] provisions." *ABF Cap. Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005) (quoting *Hambrecht & Quist Venture Partners v. Am. Med. Int'l. Inc.*, 38 Cal. App. 4th 1532, 1544 (1995)). This analysis asks a court to first consider whether the chosen state has a substantial relationship to the parties or their transaction, then whether the chosen state's law is contrary to a fundamental policy of California; if a conflict is found, the court must consider whether California has a materially greater interest than the chosen state in determining the issue. *Id.*

1.  <u>PayPal Has a Substantial Relationship to Delaware</u>

It is black-letter law that a "substantial relationship exists where one of the parties is domiciled or incorporated in the chosen state." *ABF*, 414 F.3d at 1065 (citing *Nedlloyd Lines B.V. v. Sup. Ct.*, 3 Cal. 4th 459, 467 (1992)). Thus, as the district court correctly concluded below, PayPal's incorporation in Delaware sufficiently establishes a substantial relationship between the contracting parties and that state. (1-ER-6); *ABF*, 414 F.3d at 1065 (party's state of incorporation creates substantial relationship with chosen state); *Kaul v. Mentor Graphics Corp*., 730 Fed. Appx. 437, 439 (9th Cir. 2018) ("Delaware has a substantial connection to the parties' transaction because it was the place of incorporation for […] one of the contracting parties"); *see also Nezri*, 2022 WL 16918024, *3-4 (applying the UA's Delaware choice-of-law provision including because PayPal was incorporated in that state).

Appellants' erroneous insistence that "[o]ther than PayPal being a Delaware corporation, Delaware … has absolutely no reason to have its law applied in this case" wholly disregards—or effectively seeks to overturn without justification— well-settled law. (Br. at 14.) Appellants fail to even suggest how the district court's reliance on Ninth Circuit precedent was improper, let alone provide a compelling reason to excuse its application here.

22

2. <u>Delaware Law Is Compatible with Fundamental California Policy</u>

The district court correctly concluded that the application of Delaware state law is not contrary to any fundamental policy of California. *ABF*, 414 F.3d at 1066; (1-ER-6-7.) "To determine the public policy of a state, 'the Constitution, laws, and judicial decisions of that state, as well as the applicable principles of the common law, are to be considered.'" *First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1156 (9th Cir. 2015) (internal citation omitted).

California (like Delaware) strongly favors arbitration and the enforcement of choice-of-law provisions. *See, e.g., ABF*, 414 F.3d at 1065; *Washington Mut. Bank, FA v. Sup. Ct.*, 24 Cal. 4th 906, 917 (2001) (California "has no public policy against the enforcement of choice-of-law provisions"); *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev., LLC*, 55 Cal. 4th 233, 235 n.4 (2012) ("strong public policy in favor of arbitration"); *Coface Collections N. Am. Inc. v. Newton*, 430 F. App'x 162, 166 (3rd Cir. 2011) ("it is only in rare circumstances that Delaware courts do not honor the choice-of-law provisions agreed to by parties in a binding contract"); *Graham v. State Farm Mut. Auto. Ins. Co*., 565 A.2d 908, 913 (Del. 1989) ("[t]he public policy of Delaware favors the resolution of disputes through arbitration").

Moreover, in light of the Supreme Court's 2011 decision in *Concepcion*, and as confirmed thereafter by the Ninth Circuit, California public policy does not and

cannot prohibit all class waivers: "Section 2 of the FAA, which under *Concepcion* requires the enforcement of arbitration agreements that ban class procedures, *is* the law of California and of every other state." *Murphy v. DirecTV, Inc*., 724 F.3d at 1226 (emphasis in original), citing *Concepcion*, 563 U.S. at 352 (FAA preempts California rule invalidating class-action waivers)). That an arbitration provision includes a class waiver does not render the provision unconscionable or unenforceable. *See Laster v. T-Mobile USA, Inc*., 407 F. Supp. 2d 1181, 1190 (S.D. Cal. 2005), aff'd, 252 F. App'x 777 (9th Cir. 2007).[5]

As they did below, Appellants' arguments ignore the governing case law decided after *Concepcion*. (1-ER-8 ("The cases that Plaintiffs cite in this context pre-dates relevant Supreme Court precedent on arbitration agreements—most importantly, [*Concepcion*]—and so is not persuasive authority.").) Moreover, even the outdated cases cited by Appellants acknowledge that, under California state law, including California Civil Code section 1668, there is no fundamental policy forbidding class action waivers in all circumstances. *See, e.g*., *Brazil v. Dell*, No. C-07-01700 RMW, 2007 WL 2255296, at *4 (N.D. Cal. Aug. 3, 2007) ("whether a class action waiver provision will be considered unconscionable in California is a fact-specific, case-by-case inquiry"); *Boghos v. Certain Underwriters at Lloyd's of*

---

[5] Appellants also expressly concede "that California's so-called *Discover Bank* rule is preempted by the FAA." (Br. at 11.)

*London*, 36 Cal. 4th 495, 507-08 (2005) (declining to extend *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000) beyond certain employer-mandated arbitration agreements).

<blockquote>3. <u>*McGill* Is Inapplicable Because Plaintiffs Do Not Seek Public Injunctive Relief</u></blockquote>

Equally unavailing is Appellants' attempt to circumvent the Delaware choice-of-law provision by invoking *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017). That case merely recognizes that California has a public policy against enforcing contracts that would waive a person's right to seek public injunctive relief in any forum. *Id.* at 952, 956. As the Ninth Circuit has clarified, the standard for what constitutes public injunctive relief under the so-called *McGill* rule is narrow in nature, and does not extend to the circumstances here:

> [P]ublic injunctive relief within the meaning of *McGill* is limited to forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons, and that do so without the need to consider the individual claims of any non-party.

*Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021).

In *Hodges*, this Circuit reversed a district court's denial of Comcast's motion to compel arbitration, holding that the requested injunctive relief targeting defendant's privacy and data-collection practices plainly stood to benefit defendant's subscribers, i.e. "a group of individuals similarly situated to the

plaintiff"; it was not relief that would "*primarily* benefit the general public as a more diffuse whole." *Id*. at 542, 549 (emphasis in original) (noting paradigmatic example of public injunctive relief is injunction against use of false advertising).

Here, the district court correctly found that California's public policy against waivers of *public* injunctive relief has no application to this dispute. Specifically, Appellants seek *private* injunctive relief to stop PayPal from assessing liquidated damages against those PayPal users who are sellers and who are determined by PayPal to have violated the AUP. (4-ER-806-809.) Further, Appellants sued on behalf of a narrowly-defined class of individuals or entities who "were PayPal users and had funds seized from their accounts by [PayPal] based on a purported breach of [PayPal's] Acceptable Use Policy." (4-ER-788.) They prayed for an "injunction ordering [PayPal] to cease and desist from engaging in the unfair, unlawful and/or fraudulent business practices alleged," i.e. the purported "seizing" of PayPal users' funds without first obtaining a final, judicial determination of actual violation of the AUP. (4-ER-808.)

Such relief would only benefit a discrete subset of PayPal users, rather than all PayPal users, let alone the public at large. *See Capriole v. Uber Techs., Inc*., 7 F.4th 854, 870-71 (9th Cir. 2021) (noting injunction to regulate contract terms is private relief primarily benefiting contracting parties); *Cottrell v. AT&T Inc*., No. 20-16162, 2021 WL 4963246, *2 (9th Cir. Oct. 26, 2021) (finding primary

beneficiaries of injunction would be current and future AT&T customers rather than the general public). At most, any benefit to the general public—individuals who have not opened accounts with PayPal—would be incidental to and derivative of the benefit to a subset of PayPal's users. Any such tenuous benefit is "not enough to classify that relief as non-waivable public injunctive relief." *Hodges*, 21 F.4th at 546, 549.

As dictated by the Ninth Circuit's decisions in *Hodges*, *Capriole*, and *Cottrell*, the district court appropriately concluded that "California's public policy against waivers of public injunctive relief…does not apply in this case where Plaintiffs seek private injunctive relief against PayPal's liquidated damages provision in the AUPs to which Plaintiffs individually agreed." (1-ER-6.) Not long thereafter, the Central District of California similarly found that the comparable injunctive relief sought in a copycat case "would benefit [plaintiff] and potentially other PayPal account holders, but not the public generally. Under *Hodges*, [plaintiff] is not seeking public injunctive relief." *Nezri*, 2022 WL 16918024, *3.

Since the district court issued its ruling, several other courts have reached similar conclusions. *See, e.g.*, *Jeong v. Nexo Cap. Inc.*, 21-cv-02392-BLF, 2022 WL 3590329, at *15 (N.D. Cal. Aug. 22, 2022) (finding *McGill* rule was not violated where requested relief targeted defendant's alleged suspension of services

and liquidation of funds because it would only "benefit a 'group of individuals similarly situated to the plaintiff'—i.e., 'current and prospective [defendant] customers'") (citations and internal marks omitted); *Brooks v. It Works Mktg., Inc.,* No. 1:21-cv-01341-DAD-BAK, 2022 WL 2217253, at \*7 (E.D. Cal. June 21, 2022) (plaintiff's failure to allege any threat of future irreparable harm rendered *McGill* inapplicable) (citation omitted).

In any event, the scope of the Class Waiver at issue here is easily distinguished from the one at issue in *McGill.* The *McGill* arbitration provision broadly deprived the plaintiff of public injunctive relief in any forum, without exception. 2 Cal. 5th at 961-62. Here, by contrast, the UA expressly states that, if a court declines to enforce the Class Waiver "because it would prevent the exercise of a non-waivable right to pursue public injunctive relief, then any dispute regarding the entitlement to such relief… must be severed from arbitration, and may be litigated in court." (2-ER-239.) Of course, Appellants do not even seek such relief on the part of the public. The specter of waiving public injunctive relief simply does not exist under the terms of the Agreement to Arbitrate at bar. Accordingly, *McGill* does not afford Appellants a vehicle by which to reverse the district court's order.[6]

---

[6] Aside from invoking *McGill*, Appellants fail to clearly articulate what unwaivable statutory right has been compromised by the Agreement to Arbitrate and otherwise allude to ambiguous policies without accompanying legal support. (Br. at 20-21.)

In sum, because the Agreement to Arbitrate "is not unconscionable under the *McGill* rule, enforcement of Delaware law would not be contrary to a fundamental policy of California." *Perez v. Discover Bank*, No. 20-cv-06896-SI, 2021 WL 4339139, at *4 (N.D. Cal. Sept. 23, 2021) (partial reconsideration granted, 2022 WL 344973 (N.D. Cal. Feb. 4, 2022), upon new evidence of plaintiff's post-order conduct). This Court, like the district court, therefore, should apply Delaware law in construing the Agreement to Arbitrate.

### C. California Does Not Have a Materially Greater Interest Than Delaware

Even if there were a conflict between Delaware law and a California fundamental policy—and there is not—California does not have a materially greater interest in determining the issue. *See ABF*, 414 F.3d at 1065. Delaware has an interest in regulating the conduct of entities incorporated under its laws. *Sands v. Union Pac. R.R. Co*., Nos. N17C-06-249 ALR, N17C-07-069 ALR, 2017 WL 5664748, at *3 (Del. Super. Ct. Nov. 20, 2017). In particular, "courts have noted the importance of enforcing choice of law provisions for businesses [like PayPal] with nationwide customers to limit the risk and expenses of litigation under different laws in every state." *Abat v. Chase Bank USA, N.A*., 738 F. Supp. 2d 1093, 1096 (C.D. Cal. 2010) (citing *Wang Labs. v. Kagan*, 990 F.2d 1126, 1129 (9th Cir. 1993)).

Here, many of Appellants' claims arise out of federal law, i.e. RICO and EFTA. Half of the named parties—including one of the Plaintiffs—reside outside of California. (4-ER-778-779.) And while California has an interest in protecting its citizens, Plaintiffs seek to assert claims on behalf of a putative *nationwide* class. (4-ER-778.) Appellants even acknowledge that "PayPal users reside in California and in many other states, and in other countries." (Br. at 26.) California has no greater interest in protecting other states' citizens than other states, such as Delaware, have in protecting citizens of California.

Because Appellants have not demonstrated how the UA's choice-of-law provision would deprive them of the remedies they seek, Delaware substantive law should be applied in evaluating the Agreement to Arbitrate.

## III. The Agreement to Arbitrate Is Valid and Enforceable

Under Delaware law, a contractual provision is unconscionable only if "no man in his senses and not under delusion would make [it] on the one hand, and as no honest or fair man would accept [it], on the other." *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 960 (Del. 1978). Unconscionability requires the "absence of meaningful choice and contract terms [that] unreasonably favorable to one of the parties." *Id.* "[B]oth procedural and substantive unconscionability are required for a court to hold an arbitration agreement unenforceable." *Hoekman v. Tamko Bldg. Prods.*, No. 2:14-cv-015810TLN-KJN, 2015 WL 9591471, *7 (E.D. Cal. Aug. 26,

30

2015); *Maxwell v. Cellco P'ship*, No. 19-152-RGA, 2019 WL 5587313, *7 (D.

Del. Oct. 30, 2019). Because appellants failed to meet their burden of proving

either type of unconscionability, the district court correctly enforced the UA's

Agreement to Arbitrate. *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181

(3d Cir. 1999) (reversing denial of motion to compel arbitration where appellate

court determined agreement was neither procedurally nor substantively

unconscionable).

### A.    Procedural Unconscionability Is Not Present

With respect to procedural unconscionability, "that a contract is adhesive

does not give rise to a presumption of unenforceability." *Graham*, 565 A.2d at

912; *see Concepcion*, 563 U.S. at 346-47 (enforcing arbitration provision in an

adhesion contract, highlighting that "the times in which consumer contracts were

anything other than adhesive are long past"). Despite Appellants' protests, unequal

bargaining power alone is "insufficient to hold an arbitration agreement

unconscionable." *Wells v. Merit Life Ins. Co.*, 671 F. Supp. 2d 570, 574 (D. Del.

2009) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991));

*Mikkilineni v. PayPal, Inc.*, No. N19C0950123 PRW CCLD, 2021 WL 2763903,

*12 (Del. Super. Ct. Jul. 1, 2021) ("An otherwise clear intent to arbitrate will not

be invalidated merely because a party did not negotiate the arbitration provision or

otherwise participate in its drafting.").

Appellants have never disputed that they were on notice that they were modifying their legal rights by checking a box and clicking a button to manifest their assent to the UA.  (2-ER-135-137); *see Cheng*, 2022 WL 126305 at *3-4. Nor do they credibly claim that they lacked a meaningful choice, as they were not required to use PayPal's non-essential services; there are other platforms through which individuals and businesses can transfer money electronically.  *See James v. Comcast Corp.*, No. 16-cv-02218-EMC, 2016 WL 4269898, *4 (N.D. Cal. Aug. 15, 2016) (holding agreement was not unconscionable where plaintiffs were free to walk away).[7]

Critically, Appellants could have opted out of the Agreement to Arbitrate— but did not.  (2-ER-138-140.)  Both Delaware and California courts have repeatedly held that an arbitration agreement is not procedurally unconscionable if it provides an opportunity to opt out.  *See, e.g., Mikkilineni*, 2021 WL 2763903, at *11 (compelling arbitration where plaintiff could have opted out); *Andre v. Dollar Tree Stores, Inc.*, No. 18-142-MN-CJB, 2019 WL 2617253, *10 (D. Del. June 26, 2019) (finding opt-out procedure supported validity of arbitration agreement);

---

[7] While California courts have acknowledged that adhesion contracts in the *employment context* typically contain some degree of procedural unconscionability, the Agreement to Arbitrate does not present the same policy considerations contemplated by such cases, rendering Appellants' reliance thereon unwarranted. *See Armendariz*, 24 Cal. 4th at 113-121 (arbitration agreement a condition of employment).

*Mohamed v. Uber Techs., Inc*., 848 F.3d 1201, 1210 (9th Cir. 2016)

("[M]eaningful right to opt-out… necessarily renders [the arbitration clause…]

procedurally conscionable as a matter of law").  Thus, as the district court correctly

concluded, the "very existence of the [UA's] opt-out option forecloses the

necessary finding under procedural unconscionability that [Plaintiffs] 'lacked a

meaningful choice' about agreeing to the arbitration provision." *Cheng*, 2022 WL

126305 at *4.

### B.     Substantive Unconscionability Is Similarly Absent

It is impossible for Appellants to show substantive unconscionability

because the arbitration procedures called for in the Agreement to Arbitrate provide

an inherently fair method of dispute resolution.  *See Graham*, 565 A.3d at 912-13.

The bilateral provision requires both parties to arbitrate under the AAA's

Consumer Rules, with small claims court available for qualifying disputes.  (2-ER-

155-156.)  Notwithstanding Appellants' general statements on oppressive forum

selection clauses, the UA does not require arbitration to occur in Delaware.

Rather, it will take place in the user's county of residence or at a mutually

agreeable location; parties also may choose arbitration by phone or written

submissions if the value of relief sought is $10,000 or less.  (2-ER-236-237); *see*

*Fleck, d/b/a Fleck's Carpet v. J.A. Moore & Sons, Inc*., No. 98-08-069, 1999 WL

1847435, at *3 (Del. Com. Pl. Jan. 29, 1999) (considering bilateral arbitration

requirement in determining that provision was not unconscionable). And as discussed at length, *supra*, the Delaware choice-of-law provision does not contravene fundamental California policy or otherwise deprive Appellants of the relief they seek.

With respect to arbitration fees, PayPal will pay arbitration costs for claims below $10,000 and, as Appellants concede, PayPal will even pay the fees for larger claims based on a showing of need to the arbitrator(s). (2-ER-238.) Beyond hypothetical statements, Appellants offer no evidence to satisfy their burden to prove that the arbitration fees would be unreasonably burdensome. *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000). Instead, they quarrel with having even to demonstrate that the costs would be prohibitive. But the district court approved PayPal's cost-shifting provision twice over, in both *Evans* and *Cheng*, astutely recognizing that "PayPal's offer to advance certain fees helps, not harms, claimants" and "does not amount to a use of superior bargaining power 'to take unfair advantage of another' party." *Cheng*, 2022 WL 126305, at *4 (internal citation omitted); (1-ER-9-10); *see also Uber Techs*., 848 F.3d at 1212 (finding arbitration agreement presented "no obstacle to pursuing vindication of [plaintiffs'] rights" where defendant committed to paying arbitration costs).

Appellants also re-argue on appeal that the arbitration provision impermissibly prevents the use of the doctrine of collateral estoppel. They fail to

inform the Court, however, that the subject clause actually reflects and conforms to existing California law on estoppel: unless the parties otherwise agree, an "arbitration award cannot have nonmutual collateral estoppel effect[.]" *Vandenberg v. Sup. Ct*., 21 Cal. 4th 815, 836 (1999). The UA is not rendered unconscionable simply because an arbitrator would not be bound by prior arbitrations involving other PayPal users. (2-ER-238.)

In sum, Appellants failed to demonstrate below that the Agreement to Arbitrate was either substantively or procedurally unconscionable. They offer no evidence or adequate legal authority for such a contention on appeal, either. Like the district court, this Court should find the Agreement to Arbitrate is valid and enforceable, and affirm the Arbitration Order.

## IV. The District Court Properly Declined to Decide Appellants' Merits Arguments

In contesting the enforceability of the UA's liquidated damages provision, Appellants attempt to misdirect this Court to adjudicate the merits of the underlying dispute—which are for an arbitrator to decide—rather than the enforceability of Agreement to Arbitrate itself. They allege that the UA "deprives PayPal users of the right to address their grievances before PayPal seizes their funds," and that this alleged deprivation both "shocks the conscience" and renders the Agreement to Arbitrate unenforceable. (Br. at 12-13.) But, as conceded by

35

Appellants, these arguments fall squarely within the scope of the Agreement to Arbitrate and are thus for an arbitrator to decide. (1-ER-7-8, 2-ER-235-239.)

In deciding the limited issue of whether there is a valid, enforceable agreement to arbitrate under the FAA, a court should "consider only issues relating to the making and performance of the agreement to arbitrate," not the underlying claims or enforceability of the underlying contract generally. *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 404 (1967). A valid arbitration agreement is enforced independently of any challenge to the remainder of the contract. *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 448-49 (2006). The district court recognized and rejected this very tactic in granting PayPal's motion to compel arbitration. (1-ER-10 ("these arguments concern the merits of this dispute, not the unconscionability of the arbitration provision itself").) Appellants proffer no basis for disregarding Supreme Court precedent to avoid the Agreement to Arbitrate.

## V.   The Parties Agreed that the District Court Was Authorized to Decide Arbitrability

Overlooked by Appellants, the UA expressly provides that "issues relating to arbitrability, the scope or enforceability of this Agreement to Arbitrate, or the interpretation of the [Class Waiver], shall be for a court of competent jurisdiction to decide." (2-ER-236.) It remains undisputed that the district court was

empowered to decide the arbitrability and enforceability of the Agreement to Arbitrate and Class Waiver.

As they did in the district court (and despite being corrected in PayPal's briefing below), Appellants continue to misquote a purported delegation clause from a 2012 amendment to the PayPal Debit Card Cardholder Agreement that has no bearing this case. (2-ER-31 at n.1.) PayPal never contended that an arbitrator rather than the Court should decide issues of arbitrability. Further, this case does not involve the Debit Card Cardholder Agreement. Appellants' entire argument is a straw man in this regard.

## VI. The District Court Correctly Applied Local Rules, and Appellants Otherwise Waived Any Attendant Challenges

In contesting the evidence proving that they entered into the UA, Appellants shoehorn two ill-timed attacks on administrative matters fully within the district court's discretion. First, Appellants belatedly protest the district court's reliance on *Cheng*. Appellants then take issue with the district court's page limits, established by the court's standing order. Neither of these assertions is accurate or persuasive. Moreover, both of these issues were raised for the first time on appeal and are thus waived.

### A.  The District Was Within Its Discretion to Relate the *Cheng* and *Evans* Cases

The district court expressly found *Cheng* was related to *Evans* in accordance with Civil Local Rule 3-12 of the Northern District of California, including because the *Cheng* plaintiff was a member of the *Evans*' putative class, both actions implicated the same provision of the same UA, and both raised the same threshold question as to the enforceability of PayPal's Agreement to Arbitrate. (SER-4.)  For the first time, Appellants now challenge the district court's "rel[iance] upon an unreported earlier PayPal case in her Court, although Appellants had no part in that case."  (Br. at 13-14.)

Appellants have not, however, challenged Local Rule 3-12 itself, given that the Northern District of California was clearly within its power to prescribe Local Rule 3-12 under 28 U.S.C. § 2071 and Federal Rule of Civil Procedure 83(a).  The latter expressly provides that "[a] judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules."  Fed. R. Civ. P. 83.  *See also Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir. 1983) (upholding local rule that was "not inconsistent with any federal law or the [FRCP] and therefore not invalid under 28 U.S.C. § 2071 and [Rule] 83") (citations omitted).

Instead of opposing PayPal's administrative motion to relate, Appellants deferred entirely to the district court's discretion.  Indeed, Appellants knowingly

waived the issue by stating in their Response: "The Evans Parties agree wholly that this is well within the discretion of the Court and will *adhere to and respect* whatever decision this Honorable Court makes in determination of the instant motion." (SER-8 (emphasis added).) Even thereafter, Appellants could have attempted to distinguish the *Cheng* decision in their opposition (filed more than two months after the relation order), but as the district court noted in its Arbitration Order, Appellants remained entirely silent on *Cheng*. (1-ER-5.) Appellants' failure to object below to the relation of the *Cheng* matter waived any argument that the district court should not have considered the related case. *See In re Ahn*, 804 F. App'x 541, 543 (9th Cir. 2020) ("[W]e generally will not consider arguments raised for the first time on appeal… A party's unexplained failure to raise an argument that was indisputably available below is perhaps the least 'exceptional' circumstance warranting our exercise of…discretion.") (citations and internal marks omitted).

**B.     The District Court's Standing Order on Page Limits Did Not Prejudice Appellants**

Appellants also insist that they were somehow "precluded from making a full and complete opposition because the [district court][8] places a ten-page limit on oppositions…." (Br. at 13-14.) Consistent with the general principle that a district

---

[8] Appellants mistakenly refer to Hon. Freeman as a Magistrate Judge here.

court is empowered to manage its dockets, a district court judge may issue standing

orders concerning motions practice. *See Dependable Highway Exp., Inc. v.*

*Navigators Ins. Co*., 498 F.3d 1059, 1066 (9th Cir. 2007) ("a district court

possesses the inherent power to control its docket and promote efficient use of

judicial resources"); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), as

amended (May 22, 1992) (same); *see also* Fed. R. Civ. P. 83.

Appellants fail to demonstrate how the 10-page limit in Judge Freeman's

Standing Order governing motions and oppositions to compel arbitration—by

which PayPal was also constrained—was prejudicial or an abuse of its

considerable discretion. *See Christian v. Mattel, Inc*., 286 F.3d 1118, 1129 (9th

Cir. 2002) (a "district court has considerable latitude in managing the parties'

motion practice and enforcing local rules that place parameters on briefing"). Nor

do they show that they were unable to sufficiently present factual or legal issues as

a result of the page limit.

Moreover, if they feared prejudice from the 10-page limit, Appellants could

have requested leave of court to file a longer brief pursuant to Local Rule 7-11,

permitting "motions to exceed otherwise applicable page limitations." Indeed,

Appellants were afforded a second opportunity after initially filing a non-

conforming opposition to file a compliant brief, at which time they could have

followed Local Rule 7-11 seeking additional pages. Aside from not demonstrating

any prejudice on appeal, Appellants also waived any argument that they were supposedly prejudiced by the district court's page limit by failing to raise that issue below through an appropriate motion. *In re Ahn*, 804 F. App'x at 543.

Appellants' recently manufactured challenge to Judge Freeman's page limit rules in no way justifies reversing the district court's decision in light of the discretion afforded district courts to manage motion practice and Appellants' failure to specify how they were prejudiced.

## CONCLUSION

For the foregoing reasons, the Arbitration Order compelling individual arbitration should be affirmed.

Dated: January 27, 2022        DENTONS US LLP

By: */s/Judith Shophet Sidkoff*
Joel D. Siegel (SBN 155581)
Judith Shophet Sidkoff (SBN 267048)
David R. Simonton (SBN 199919)
Karl M. Tilleman (SBN 013435)

Attorneys for Defendant-Appellee,
PAYPAL, INC.

41

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28.2-6, Defendant-Appellant certifies that it is not aware of any related cases pending in this Court.

Dated:  January 27, 2022          DENTONS US LLP


By: */s/Judith Shophet Sidkoff*
Joel D. Siegel (SBN 155581)
Judith Shophet Sidkoff (SBN 267048)
David R. Simonton (SBN 199919)
Karl M. Tilleman (SBN 013435)

Attorneys for Defendant-Appellee,
PAYPAL, INC.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that:

I am an attorney with the law firm of Dentons US LLP, counsel for Defendant- Appellee Paypal, Inc., in this action.

This brief contains 8,986 words, excluding the items exempted by Fed. R. App. P. 32(f), and complies with the word limit of Circuit Rule 32-1. It complies with the typeface and typestyle requirements of Rules 32(a)(5), 32(a)(6), and 32-1 because it was prepared in a proportionately spaced typeface using Microsoft Word for Microsoft 365 Times New Roman 14-point font.

Dated: January 27, 2022       DENTONS US LLP

By: _/s/Judith Shophet Sidkoff_
Joel D. Siegel (SBN 155581)
Judith Shophet Sidkoff (SBN 267048)
David R. Simonton (SBN 199919)
Karl M. Tilleman (SBN 013435)

Attorneys for Defendant-Appellee,
PAYPAL, INC.

43